UNITED STATES of America, Plaintiff–Appellee,

v.

Jackie Wayne BLANKENSHIP, Defendant–Appellant.

No. 90–1093
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1991.

Christopher Lee Milner, Gardere & Wynne (Court-appointed), Dallas, Tex., for defendant-appellant.

Candina S. Heath, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, POLITZ, and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

A jury convicted Jackie Wayne Blankenship on two separate counts for being a felon in possession of a .357 magnum caliber revolver and for using that revolver while committing a drug trafficking offense. He appeals that conviction for a variety of reasons: that there was insufficient evidence to convict him, that the trial court erred by authorizing the jury to convict him under a theory for which he was not indicted, that the key witness against him was legally incompetent to testify, and that he received ineffective assistance from his trial counsel. Finding each of these assertions to be without merit, we AFFIRM the conviction.

The district court sentenced Blankenship to twenty years in prison; three-fourths of that sentence was imposed because of a federal statute which establishes a fifteen year mandatory penalty for a felon who unlawfully uses a firearm after having been convicted of three prior violent felonies. Blankenship has been convicted of three violent felonies, but each of these convictions is more than twenty-five years old, and he contends that they are too remote in time to serve as a predicate for enhancing his sentence. But we can find no indication that Congress intended to impose a temporal restriction on felonies used for enhancing a defendant's sentence under this statute. Consequently, we AFFIRM Blankenship's sentence as well.

## I.

### A. Facts

On January 9, 1989, two Special Agents of the Federal Bureau of Investigation (FBI) were assisting local law enforcement officers in Dallas, Texas, in executing an arrest warrant for Jackie Wayne Blankenship. Driving an unmarked car, the agents surveyed the parking lots of hotels along Interstate 35 near Dallas, where they were told that Blankenship might be staying. At the Guest Inn in Carrollton, Texas, they spotted a two-tone silver and blue Chevrolet pickup truck, which matched the description of the vehicle that they believed Blankenship would be driving. Less than a minute later, a man matching Blankenship's description left the hotel and drove away in the truck.

The agents followed the truck for about forty-five minutes and then pulled it over with the assistance of a marked unit of the Dallas Police Department. After the truck was stopped, Blankenship was placed under arrest. One of the police officers searched him and found $135 in one pocket, ten $100 bills in another, a pocket knife, and an address book. Meanwhile, another police officer searched the truck and discovered an overnight bag, which contained two smaller bags: one contained jewelry, and the other contained 385 Diazepam tablets and thirty-five Valium tablets. He also found a small bag of marijuana that had been hidden under the dashboard near the steering column.

The two FBI agents returned to the Guest Inn to review the registration records for Room 117, the room from which Blankenship had left that morning. They discovered that the room was registered to Lois M. Ivie. Several agents and officers from the Dallas Sheriff's Office spoke with the manager of the hotel and received a pass key. Then, after knocking on the door and receiving no answer, the FBI agents and local law enforcement officers entered the room.

As soon as they went in, they saw Lisa Lynn Miles, a twenty-two year old woman, standing next to the door. She immediately turned around, braced her hands against the wall, and told one of the FBI agents that she had a gun in her pants. The agent searched her and found a Charter Arms .38 special. He asked her whether any other weapons were in the room, and she told him that a .357 magnum caliber revolver was under the mattress of the bed. The agent looked under the mattress and found the fully loaded .357. No fingerprints were detected on the gun.

After arresting Miles, the officers searched the room and found marijuana, methamphetamine, and a variety of drug paraphernalia, including syringes with various amounts of liquid in them; a list of items needed for a methamphetamine lab; and a small black legal pad holder, which contained drawings that depicted a process for manufacturing amphetamine and methamphetamine. The legal pad holder also contained an address book with some of the same phone numbers that were in the address book found on Blankenship.

Miles was a crucial witness for the government at Blankenship's trial. She began by explaining her tumultuous background. She had been convicted for a number of felonies and was currently in prison for auto theft. She admitted to being a drug addict and stated that she had been smoking marijuana since she was thirteen and had been using methamphetamine since she was seventeen. She survived by doing errands for drug dealers, who would provide her with narcotics and shelter in exchange. She also conceded that she had taken drugs throughout the incidents about which she was testifying.

The day before she and Blankenship were arrested, a man, whom Miles later identified as "Sonny," brought her to the Travelers Inn Motel in Mesquite, Texas. Sonny took her to a room where Blankenship was waiting and "sold" her to Blankenship for $5000. Later, a woman, whom she identified as Lois Ivie, came and drove Miles to the Guest Inn.

After they reached the Guest Inn, Ivie told Miles that they would be helping to manufacture methamphetamine for Blankenship, and she gave her some instructions and diagrams to review. Ivie also showed her the .38 special and told her that she could use it if she needed to.

Blankenship arrived at the Guest Inn about two hours later carrying a bag. On direct examination, Miles stated that she had seen Blankenship take the .357 magnum out of the bag but that she had not seen what he had done with it. On cross-examination, however, she testified that Blankenship had taken the gun from his pants and that she had seen him place it under the mattress. Miles also stated that Blankenship and Ivie had an argument regarding the .38: Ivie had put only four bullets in the revolver, and Blankenship had wanted her to fully load the gun with five bullets. Later that evening, Blankenship explained to Miles that she would be "cooking dope" for him.

The next morning, Ivie had left before Miles awoke. Blankenship told Miles that he had to go collect some money, and then he left the room with the overnight bag. He never told Miles about the .357 magnum under the mattress. The police arrived several hours later.

### B. Procedural History

Blankenship was named in a two-count indictment filed in the Northern District of Texas. In the first count, he was charged with unlawful possession of the .357 magnum. Federal law prohibits an individual from possessing a firearm if that person has been convicted of "a crime punishable by imprisonment for a term exceeding one year." See 18 U.S.C.A. § 922(g)(1) (West Supp.1990). In 1983, Blankenship was convicted, in Wisconsin, of aggravated battery with a dangerous weapon and sentenced to seven years in prison. Because Blankenship had four prior violent felonies, the government also sought a fifteen year mandatory sentence for that count. See id. § 924(e)(1) (West Supp.1990).

In the second count, the government alleged that Blankenship used the .357 mag-

num [1] "during and in relation to" a "drug trafficking crime," *see id.* § 924(c)(1), namely, possession with the intent to distribute methamphetamine and conspiracy to manufacture and distribute methamphetamine, *see* 21 U.S.C.A. § 841(a)(1) (West 1981). Blankenship was not separately prosecuted under section 841(a)(1). A jury convicted Blankenship on both counts, and the district judge sentenced him to twenty years in prison, followed by three years of supervised release. The sentence included the fifteen year enhancement required by section 924(e)(1).

## II.

*A. Sufficiency of the Evidence: Knowing Use of a Firearm During and in Relation to a Drug Trafficking Crime*

■ The relevant portion of section 924(c)(1) of Title 18 provides that "[w]hoever, *during and in relation to* any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, *uses or carries a firearm,* shall ... be sentenced to imprisonment for five years...." (emphasis added). Because the indictment only charged Blankenship with "using" rather than "using or carrying" a firearm, the government was required to prove that he had committed a drug trafficking crime, either possession with the intent to distribute methamphetamine or conspiracy to manufacture and distribute methamphetamine, and that he had "knowingly used" the .357 magnum "during and in relation to" that crime. Blankenship contends that the government produced insufficient evidence to convict him because the .357 played no part in the underlying narcotics charges.

■ In reviewing the sufficiency of the evidence used to convict Blankenship, we must decide whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d

560 (1979) (emphasis in original); *see also United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984). Any doubt about the credibility of witnesses or about inferences that can be drawn from the evidence should be resolved in favor of the jury's verdict. *See United States v. Molinar–Apodaca,* 889 F.2d 1417, 1423 (5th Cir.1989).

■ To adjudge Blankenship guilty under section 924(c)(1), the jury was required to find that he used the .357 magnum in connection with his plan to process and distribute methamphetamine. *See United States v. Boyd,* 885 F.2d 246, 250 (5th Cir.1989); *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988). "Use" does not mean discharging or brandishing the weapon; it simply means that the weapon facilitated, or could have facilitated, the drug trafficking charges. *See* S.Rep.No. 225, 98th Cong., 2d Sess. 314 n. 10, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10; *United States v. Coburn,* 876 F.2d 372, 375 (5th Cir.1989). Possession of the gun does not constitute "use" unless the gun formed a part of the narcotics crime. *See United States v. Robinson,* 857 F.2d 1006, 1010 (5th Cir.1988). After synthesizing the facts that have supported prior convictions under section 924(c)(1), we believe that a rational jury could have found that Blankenship used the .357 "during and in relation to" a scheme to produce and distribute methamphetamine.

In *Coburn,* a woman driving a pickup truck with a toolbox and farm equipment in the bed was stopped at a border checkpoint. *See* 876 F.2d at 373. The truck had a gun rack in the rear window, which held a .410 gauge shotgun, but the gun was unloaded and there were no shells for it in the vehicle. After inspecting the truck, the Border Patrol agents discovered 218 pounds of marijuana hidden in a compartment underneath the toolbox. *See id.* at 374. The woman was convicted for pos-

---

**1.** Lisa Miles testified that the .38 special which she was carrying when she was arrested belonged to Lois Ivie. Therefore, the charges

against Blankenship were limited to unlawful possession of the .357 magnum.

session with intent to distribute marijuana and for using the unloaded shotgun "during and in relation to" the drug trafficking offense, and this court held that the government had produced sufficient evidence to prove "that a relationship existed between the .410 shotgun and the underlying drug trafficking offense." *See id.* at 375.

In *United States v. Beverly,* 921 F.2d 559, 560 (5th Cir.1991), government agents had been conducting a surveillance of an apartment building and had observed the defendants selling cocaine in front of the building and on the staircase landings. The defendants were armed when the sales were made. The agents believed that the cocaine was being stored in one apartment in the building, and they obtained a search warrant for that apartment. Inside, they discovered two revolvers in a safety deposit box under a mattress in a bedroom, where they also found one-half gram of cocaine. *See id.* at 561. Neither of the revolvers fit the description of the weapons that the agents had seen on the defendants before. *See id.* Nevertheless, the court held that a reasonable jury could infer that *these* revolvers were to be used to protect the cash and drugs and, therefore, were used "during and in relation to" the drug trafficking offenses. *See id.* at 563.[2]

Miles's testimony and the evidence seized by the law enforcement officials support the conclusion that Blankenship intended to begin producing and distributing methamphetamine. Miles also testified that when Blankenship entered the room at the Guest Inn he was carrying a bag containing the .357, which he indicated was his. Miles did not explain exactly why Blankenship was carrying the gun, but her statements support the conclusion that he was concerned about protecting the items in the motel room and would have used the .357 magnum to protect the narcotics and drug paraphernalia if the occasion arose. He knew that Ivie had told Miles that she could use the .38, and he told Ivie to fully load the chamber. The jury also may have believed that Blankenship intended to use the gun to intimidate the two women who would be working for him. Whatever he actually intended to do with the revolver, the jury was reasonable in concluding that it was connected to the nascent drug transactions, rather than to some other activity, and this is all that section 924(c)(1) requires. *See United States v. Wilson,* 884 F.2d 174, 177 (5th Cir.1989) (noting that "the 'in relation to' language was calculated to avoid convictions for 'inadvertently carrying a firearm in an unrelated crime' " (quoting *United States v. Ramos,* 861 F.2d 228, 231 (9th Cir.1988))); *United States v. Brown,* 915 F.2d 219, 226 (6th Cir.1990) (noting that courts should not determine whether a defendant "used" a firearm by focussing solely on the defendant's intentions but should "examine the totality of the circumstances surrounding the commission of the crime").

The only major difference between this case and *Beverly* or *Coburn* is that Blankenship had already been arrested at a different location by the time the officers searched the room. This distinction is legally insignificant. *See United States v. Hadfield,* 918 F.2d 987, 996–98 (1st Cir. 1990) (holding that evidence was sufficient to support a conviction under section 924(c)(1) even though the weapons were located at a storage facility rather than at the site of the anticipated drug transaction). Consequently, we find that the strand of evidence connecting Blankenship, the gun, and the drug trafficking supported the jury's verdict.

**B.** *Inconsistency Between the Indictment and Jury Charge*

Although section 924(c)(1) prohibits an individual from *using or carrying* a

---

**2.** In the following cases, courts also have held that the evidence was sufficient to support a conviction under section 924(c)(1): *United States v. Molinar–Apodaca,* 889 F.2d 1417, 1424 (5th Cir.1989) (officers found marijuana and drug paraphernalia in a shed outside the house and two automatic weapons in the house); *United States v. Wilson,* 884 F.2d 174, 176–77 (5th Cir.1989) (defendant was arrested outside of his car with an automatic pistol in the waistband of his pants, and a search of the car revealed 139 grams of methamphetamine); *United States v. Chase,* 692 F.2d 69, 71 (9th Cir.1982) (search of defendant's house revealed 1120 grams of cocaine and a .38 caliber pistol).

firearm during a drug trafficking crime, the indictment omitted the word "carries" and alleged only that Blankenship had "knowingly used" the .357 "during and in relation to a drug trafficking crime." Blankenship contends, however, that the district judge's charge misled the jury into believing that it could convict him for unlawfully "carrying" the weapon as well, a theory under which he was not indicted. He points out two statements by the judge that he believes could have caused this misconception. First, when the district judge gave his charge to the jury, he began by quoting section 924(c)(1) and included both verbs, "uses" and "carries." *See* Transcript of Jury Trial, Record on Appeal (R.), vol. 4, at 17. Second, at one point he stated that the jury could convict Blankenship of violating section 924(c)(1) if it found, beyond a reasonable doubt, "that the defendant *used or carried* a firearm during and in relation to the narcotics crimes." *See id.* at 18.

■ The purpose of the indictment is to inform a defendant of the charges that he must defend against at trial. *See United States v. Moree,* 897 F.2d 1329, 1333 (5th Cir.1990). Therefore, a defendant may not be tried and convicted for a crime not charged in the indictment. *See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). But if the evidence adduced at trial is such that the defendant could only be convicted of the offense for which he was indicted, a minor variation between the words of the indictment and the words of the judge's instruction to the jury is harmless error. *See United States v. Young,* 730 F.2d 221, 223 (5th Cir.1984).

In this case, the government produced no evidence from which the jury could have inferred that Blankenship was carrying the firearm. "[A] person cannot be said to 'carry' a firearm without at least a showing that the gun is within reach during the commission of the drug offense," *Feliz–Cordero,* 859 F.2d at 253, and the evidence conclusively demonstrated that Blankenship was *not* carrying the .357 when he was arrested. Therefore any misunder-

standing would have benefitted Blankenship.

Moreover, although the judge erroneously stated that Blankenship could be convicted for using or carrying the weapon, the judge only defined the term "use."

> The Government is not required to prove that the defendant actually fired the weapon or brandished it at someone in order to prove use, as that term is used in this instructions [sic]. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a drug offense. In other words, you must find that the firearm was an integral part of the drug offense charge. "Possession" as that term has been previously defined for you, may alone constitute use if you are convinced beyond a reasonable doubt that the firearm involved was an integral part of the drug trafficking offense.

R., vol. 4, at 18. Consequently, it is inconceivable that the jury convicted Blankenship for any crime other than using the .357.

### C. Whether Lisa Miles was a Competent Witness

■ Lisa Miles admitted to the jury (1) that she was a drug addict; (2) that she had committed a number of felonies and was currently incarcerated; (3) that her drug use occasionally caused her to hallucinate; and (4) that she had taken drugs throughout her brief relationship with Blankenship and Ivie. In addition, portions of her direct testimony were inconsistent with her testimony on cross-examination. Finally, some of her testimony seemed confused. Based on these facts, Blankenship argues that the district judge should have declared Miles to be incompetent and should have refused to allow her to testify against him.

■ The trial court has complete discretion to decide whether a witness is competent to testify. *See Gurleski v. United States,* 405 F.2d 253, 267 (5th Cir.1968), *cert. denied,* 395 U.S. 977, 981, 89 S.Ct. 2127, 2140, 23 L.Ed.2d 765, 769 (1969). Moreover, the presumption is that "[e]very

person is competent to be a witness" if that person has personal knowledge of a matter and states that she will speak truthfully. *See* Fed.R.Evid. 601. The flaws in Miles's testimony may have impaired her credibility, but they did not affect her competency. *See United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir.) (holding that witness' drug use at the time of the incidents about which he was testifying went to credibility, not competency), *cert. denied*, —— U.S. ——, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989). Consequently, we hold that the district judge did not abuse his discretion when he allowed her to testify.

*D. Ineffective Assistance of Counsel*

Blankenship also argues that we should reverse his conviction because his trial counsel was ineffective.[3] Ordinarily, because he did not raise this claim before the district court, we would not resolve it on direct appeal "since no opportunity existed to develop the record on the merits of the allegations." *See United States v. Lewis*, 902 F.2d 1176, 1180 (5th Cir.1990) (quoting *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988)). In this case, however, we believe that the existing record clearly demonstrates that the performance of Blankenship's counsel was not constitutionally deficient. *See United States v. Phillips*, 664 F.2d 971, 1040 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). For Blankenship to succeed, he must first show that his attorney failed to give him reasonably competent assistance. *See id.* at 687, 104 S.Ct. at 2052. Second, he "must show that the deficient performance prejudiced the de-

fense." *Id.* Blankenship's allegations do not even approach the threshold of these two tests.

■■■ Blankenship asserts that his attorney was constitutionally deficient because during voir dire he allowed the district judge to state that section 924(c)(1) prohibits an individual to "possess" a firearm during a drug trafficking offense. As we explained in Part II(A) of this opinion, mere possession of the .357 magnum is not enough to support a conviction under section 924(c)(1) unless the revolver was a part of the narcotics crimes. But the thrust of Blankenship's defense was that the .357 belonged to Miles, not to him. *See* R., vol. 2, at 53; R., vol. 4, at 56. Because Blankenship was not carrying the gun when he was arrested, and because his fingerprints were not on it, Blankenship's attorney was reasonable in trying to disassociate Blankenship from the revolver, rather than trying to convince the jury that it did not facilitate the drug trafficking crime.

Even if Blankenship's attorney should have objected to the judge's characterization of the offense, his failure to do so could not have affected the outcome of the trial in any way. In his charge to the jury, the judge explicitly stated that Blankenship could not be convicted for possessing the revolver unless it played an integral role in the drug trafficking crime. *See* R., Vol. 4, at 18 (reprinted in this opinion at 1116). This corrected any latent misunderstanding by the jury.

■■■ The remaining challenges to the performance of Blankenship's trial counsel are baseless. For example, Blankenship challenges his attorney's failure to object to the warrantless search of the hotel room. But Blankenship's right to occupy the room had expired two hours before the search began, and, therefore, the police were not required to obtain a search warrant. *See United States v. Ramirez*, 810 F.2d 1338, 1341 & n. 3 (5th Cir.), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987). He challenges the at-

---

**3.** This contention is ironic because the district judge actually praised the performance of Blankenship's attorney. *See* Supplementary Record on Appeal at 13.

torney's failure to question Miles's competency, but the attorney relentlessly attacked her credibility, which, we have pointed out, was the proper thing for him to do. *See* Part II(C), *supra.* After reviewing the Record on Appeal, it is clear that Blankenship received adequate representation during his trial. Having dismissed each of Blankenship's challenges to his conviction, we now address the challenge to his sentence.

### III.

Blankenship was convicted of violating 18 U.S.C. § 922(g)(1), which prohibits any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. Federal law also provides that a person who violates section 922(g) shall be "imprisoned not less than fifteen years" if that person has three prior convictions for a violent felony. *See* 18 U.S.C.A. § 924(e)(1) (West Supp.1990). The trial court enhanced Blankenship's sentence under this statute based on previous felony burglary convictions in 1959, 1962, and 1965. Blankenship admits that these prior convictions fall within the class of felonies to which the statute refers, but he contends that they were too remote in time to serve as a proper predicate for enhancement of the sentence.

If a statute that imposes a criminal penalty is ambiguous, it must be construed in favor of the defendant. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). However, in this case, section 924(e)(1) is not ambiguous. There is no indication, either in the statute or in the legislative history, that Congress intended to include a temporal restriction in that statute. *See United States v. Green,* 904 F.2d 654, 655–56 (11th Cir.1990); *see also Young v. Bureau of Alcohol, Tobacco & Firearms,* 690 F.Supp. 990, 995 (S.D.Ala.1988) (holding that period of proscription for firearm ownership under section 922(g)(1) was indefinite). We refuse to construct such a restriction out of nothing. Blankenship's sentence is affirmed.

### IV.

The government produced sufficient evidence from which a reasonable jury could find that Blankenship used a .357 magnum caliber revolver "during and in relation to" a drug trafficking offense; the trial court did not authorize the jury to convict Blankenship for "carrying" rather than "using" the revolver; any foibles in Lisa Miles's character or testimony did not affect her competency as a witness; and Blankenship received effective assistance from his trial counsel. Therefore, we AFFIRM the conviction. Also, because Congress did not impose a temporal restriction on felonies used for enhancing a defendant's sentence under section 924(e)(1), we AFFIRM Blankenship's sentence as well.