**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gilberto PINEDA–ORTUNO and Carlos
Ramirez–Carranza, Defendants–
Appellants.**

No. 90–8718.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1992.

Steven L. Woolard, Fort Stockton, Tex. (Court-appointed), for Pineda–Ortuno.

Dan Newsome, Marfa, Tex. (Court-appointed), for Ramirez–Carranza.

LeRoy Morgan Jahn, Asst. U.S. Atty., Richard F. Ederer, U.S. Atty., San Antonio, Tex., W.W. Torrey, Asst. U.S. Atty., Midland, Tex., for U.S.

Before HIGGINBOTHAM and BARKSDALE, Circuit Judges, and McBRYDE[1], District Judge.

1. District Judge of the Northern District of Texas, sitting by designation.

2. Pineda briefed four issues on appeal and by letter to the clerk dated July 5, 1991, sought to adopt the points raised by Ramirez in his brief. Such an adoption by reference is authorized by

McBRYDE, District Judge:

Appellants, Gilberto Pineda–Ortuno ("Pineda") and Carlos Ramirez–Carranza ("Ramirez"), appeal from their convictions of (1) conspiracy to possess more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 846, (2) possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (3) carrying a firearm, a Titan .38 caliber revolver during and in relation to the possession and conspiracy violations, in violation of 18 U.S.C. § 924(c)(1), and (4) carrying a firearm, a Colt .38 caliber semiautomatic pistol, during and in relation to the possession and conspiracy violations in violation of 18 U.S.C. § 924(c)(1). Seven issues common to appellants are presented by them for review.[2] Three address the sufficiency of the evidence to support the jury's verdict of guilt under 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 924(c)(1); one concerns the judge's charge; two concern the judge's instructions to the jury; and another concerns alleged improper statements made by the prosecutor in closing argument. Ramirez designates an additional issue presented for review as to evidence used against him at trial. We have concluded that none of the issues designated by appellants is ground for reversal.

Pineda includes an additional argument under one of his points that the evidence is insufficient to sustain his guilt on the two gun counts "because ... at most the government proved one act with two weapons." Pineda's brief at 9. We interpret his complaint to be that the trial court erred in sentencing him on both firearms counts because each was not linked to a separate drug trafficking offense in the indictment. Because we conclude that this constitutes plain error, we vacate the sentences of both appellants, even though the issue was not raised by Ramirez, and remand with instructions that the firearms

Fed.R.App.P. 28(i). *Atwood v. Union Carbide Corp.*, 847 F.2d 278, 279 n. 2, *reh. denied,* 850 F.2d 1093 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). Accordingly, the court grants the request.

count elected by the government be dismissed. Appellants will then be resentenced upon the remaining counts.

## I.

On July 25, 1990, United States Border Patrol Agent Felix Chavez stopped a blue 1977 Chevrolet Caprice. Ramirez was driving the vehicle. Pineda occupied the rear seat where he appeared to have been sleeping. Agent Chavez determined that Ramirez and Pineda were both Mexican citizens. Because Ramirez was "acting in a nervous manner", he referred the vehicle to the secondary inspection area, where supervisory Border Patrol Agent Joseph L. Tammen and Agent Chavez requested that appellants exit the vehicle. Agents Chavez and Tammen conversed with appellants in Spanish while conducting a search of the vehicle. The dog used in the search jumped into the trunk of the car, indicating that contraband was in the trunk or back seat area. Agent Chavez inspected the back seat of the vehicle and felt something under the seat. When he lifted the seat, he found a brick-sized object wrapped in tape and a .38 caliber semiautomatic pistol with two fully loaded magazines adjacent to it. The agents conducted a field test and determined that the taped package contained cocaine. Appellants were placed under arrest. Upon further inspection, the agents found another taped package and a fully loaded revolver.

Prior to and following their arrest, appellants gave conflicting stories as to their activities. Basically, each alleged that he had agreed to accept money to drive the car from Anaheim, California, to Houston, Texas, and that he did not know where or to whom the vehicle was to be delivered, but that the other defendant did know. When asked if he owned the car, Ramirez asserted that it belonged to Pineda. Pineda, however, denied ownership, and asserted that the car belonged to Pedro Duran in California.

At trial, Agent Chavez testified that appellants appeared nervous as the car was being searched. Further, when he went over to inspect the back seat of the car,

Pineda came up behind him and was looking at him as though upset. Chavez asked Pineda to step back so that he could search the interior of the car. After defendants were arrested, Chavez asked if they knew the contraband was under the back seat. Ramirez replied that he knew the guns were there.

Agent Tammen testified that Pineda came up behind Agent Chavez in an aggressive manner as Chavez was going to inspect the back seat. Pineda acted as though the agents were getting close to something he did not want them to find.

DEA Agent Kelly, who interviewed appellants, testified that Ramirez wanted to make a deal with the government and asked, "if I was to tell you the whole story, what would you do for me?" or something to that effect.

Ramirez testified that he was a mechanic and carpenter who lived on Palm Street in Anaheim, California. He had been told he would be paid $500.00 plus bus fare back to California for helping to drive the car to Houston. He received no money up front. He did not know where to deliver the car, but Pineda did. Ramirez saw Pineda with a pistol, government's exhibit 8, the .38 revolver, before they left on their trip. Pineda started off driving the car, then Ramirez took over and Pineda got in the back seat. Ramirez further testified that while he was in jail, he was threatened, he was beaten, and finally, he was offered $5,000.00 by Pineda not to testify, even though Ramirez maintained that he knew nothing to tell.

Pineda testified that a man named Pedro Duran offered to pay him $400.00 to drive the car from California to Houston. The car was to be delivered to Duran's brother because Duran did not have immigration papers to allow him to travel. Duran told Pineda that Ramirez would have the address where the car was to be delivered. Pineda received $500.00 from Duran to pay for expenses on the trip and a plane ticket for Pineda's return to California. Pineda drove the car for several hours then went to sleep in the back seat. He awoke when the car was stopped at the Sierra Blanca

checkpoint. Pineda gave the DEA agents a telephone number for Duran, which was also the number on a motor vehicle contract and security agreement found in the car when it was stopped. The contract reflected that the car was purchased by a Roberto Carreno of 1233 Palm, Anaheim, California, apparently the same street where Ramirez said he lived.

Two fellow prisoners testified that they were not aware of any threats made against Ramirez. A jailer testified that there was no record of any assault or threatened assault against Ramirez. Nor was there any record of any bribe offered to Ramirez.

Each appellant was convicted of one conspiracy count, one count of possession with intent to distribute and two counts of carrying a firearm during the commission of a drug trafficking crime. They were sentenced to seventy-eight (78) months imprisonment on each of the two drug trafficking crimes, to run concurrently, and sixty (60) months on each of the firearms counts, to run consecutive to each other and consecutive to the sentence for the drug trafficking crimes.

## II.

Appellants first challenge the sufficiency of the evidence to support their convictions on the drug trafficking counts. Both allege that the government failed to prove that they knowingly possessed the cocaine hidden under the back seat of the car and that they conspired to possess and distribute it.

■ We review the sufficiency of the evidence supporting a criminal conviction to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Espinoza–Seanez*, 862 F.2d 526, 536 (5th Cir. 1988). The evidence is viewed most favorably to the government, drawing all reasonable inferences and credibility choices in favor of supporting the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988). The stan-

dard is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (*en banc*), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ Knowing possession can be inferred from a defendant's control over the vehicle in which the illicit substance is contained in a hidden compartment if there exists other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge. *United States v. Anchondo–Sandoval*, 910 F.2d 1234, 1236 (5th Cir. 1990). Here, appellants' control over the vehicle, which they both admitted driving, when combined with appellants' nervousness, conflicting statements, and implausible stories, is sufficient to support a finding that they had knowing possession. *United States v. Diaz–Carreon*, 915 F.2d 951, 954–55 (5th Cir.1990). *Contra, United States v. Ferg*, 504 F.2d 914 (5th Cir.1974). The fact that appellants possessed a larger quantity of cocaine than an ordinary user would possess for personal consumption supports the finding that appellants intended to distribute the drug. *United States v. Kaufman*, 858 F.2d 994, 1000 (5th Cir. 1988).

Appellants rely on *United States v. Pierre*, 932 F.2d 377 (5th Cir.1991), in support of their position that the evidence is insufficient to support knowing possession and conspiracy. However, rehearing *en banc* has been granted in that case. 943 F.2d 6 (5th Cir.1991). Therefore, the panel decision is vacated and of no precedential value. 5th Cir.R. 41.3; *Selvage v. Lynaugh*, 842 F.2d 89, 91 (5th Cir.), *cert. granted in part on other grounds*, 493 U.S. 888, 110 S.Ct. 231, 107 L.Ed.2d 182 (1988), *vacated*, 494 U.S. 108, 110 S.Ct. 974, 108 L.Ed.2d 93 (1989); *Hooten v. Jenne*, 786 F.2d 692, 695 (5th Cir.1986). In any event, *Pierre* is distinguishable, because the issue in that case was whether the defendant had possession of a suitcase within a vehicle he had driven. We determined that the vehicle control inference did not apply because the contraband was not

secreted in the vehicle itself. 932 F.2d at 392–93. Here, the contraband was in the vehicle itself, over which appellants had dominion and control; hence, the inference applies. Moreover, this is not a case of mere association or mere presence at the scene of a crime. *Contra Ferg,* 504 F.2d at 916–17. From the evidence presented, the jury could have found the existence of a conspiracy beyond a reasonable doubt.

### III.

Appellants complain about the trial court's instructions to the jury regarding the elements of the firearms charges under § 924(c). The indictment charged appellants only with "carrying a firearm", but the court instructed the jury using the phrase "knowingly used or carried a firearm." [3] They also challenge the sufficiency of the evidence in support of their convictions on these counts.

We recognize that the distinction between "use" and "carrying" is subtle and elusive. Courts that have discussed the definitions have generally agreed that "carrying" is to be interpreted narrowly, while "use" is interpreted more broadly. We have said in a non-vehicle context that "carrying" requires a showing that the gun was in reach during the commission of the drug offense. *United States v. Blankenship,* 923 F.2d 1110, 1116 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991). *Accord United States v. Joseph,* 892 F.2d 118, 126 (D.C.Cir.1989) (carrying requires a present ability to exercise dominion and control over a firearm and that the firearm be within easy reach); *United States v. Feliz–Cordero,* 859 F.2d 250, 253 (2nd Cir.1988) (a person cannot be said to carry without at least showing that the gun was within reach during the commission of a drug offense). Use, on the other hand, requires only a showing that a firearm was available to provide protection in connection with drug trafficking. *United States v. Beverly,* 921 F.2d 559, 562 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2869, 115 L.Ed.2d 1035 (1991). *See also United States v. Blake,* 941 F.2d 334, 342 (5th Cir.1991) (using requires only that the weapon protect or facilitate the operation or have the potential to do so and that the presence of the weapon was in some way connected with the drug trafficking); *Blankenship,* 923 F.2d at 1116 ("use" means that the firearm played a role in or facilitated the commission of drug offense, i.e. that firearm was an integral part of the drug trafficking); *Accord Feliz–Cordero,* 859 F.2d at 254 ("use" means that the possessor intended to have the gun available or the gun was strategically located at the place where contraband was kept so as to be quickly available).

There is no need, however, for the court to engage in semantics in the context of this case, because appellants were necessarily convicted of the offense for which they were indicted: carrying a firearm during and in relation to a drug trafficking

---

**3.** The pertinent part of the charge reads:

Counts 3 and 4 of the indictment allege offenses in violation of Title 18, United States Code, Section 924(c)(1), which makes it a crime for anyone to use or carry a firearm during or in relation to a drug trafficking crime.

For you to find a defendant guilty of this crime, you must be convinced that the Government has proven beyond a reasonable doubt each of the following:

First: That the defendants committed the crime alleged in Count 1 and or 2. I instruct you that Counts 1 and 2 are drug trafficking crimes;

Second: That the defendants knowingly used or carried a firearm and/or firearms during and in relation to the defendants' commission of the crimes alleged in Count 1 and/or 2

The government is not required to prove that a defendant actually fired the weapon or brandished it at someone in order to prove use, as that term is used in these instructions. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a drug offense. In other words, you must find that the firearm was an integral part of the drug offense charged.

The term "firearm" means any weapon which will or is designed to, or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" will also included [sic] the frame or receiver of any such weapon or any firearm muffler or firearm silencer or destructive device.

crime. The word "carry" derives from the french *carier,* which means "to transport in a vehicle." *Webster's Third International Dictionary* 353 (1966). The first definitions of "carry" given by Webster are: "to move while supporting (as in a vehicle or in one's hands or arms): move an appreciable distance without dragging: sustain as a burden or load and bring along to another place." *Id.* As noted in *Feliz–Cordero,* the legislative history of § 924(c) does not suggest that the term "carry" should be construed as having any meaning beyond its literal meaning. 859 F.2d at 253. *See also United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979). Thus, there can be no question that the evidence in this case, if believed, was that appellants carried firearms during and in relation to a drug trafficking crime. Each defendant admittedly operated the vehicle while the firearms were in it, and there is evidence from which the jury could find beyond a reasonable doubt that each defendant knew of the presence of the guns in the vehicle and that the firearms were in the vehicle during and in relation to a drug trafficking crime.

Those cases cited above that would seem to suggest that for there to be a "carrying" the weapons must be located within such proximity so as to make them immediately available for use are distinguishable. The cases requiring "easy reach" are the result of judicial expansions of the definition of "carrying" in a nonvehicle context. *See, e.g., United States v. Evans,* 888 F.2d 891, 894–95 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990); *United States v. Rosado,* 866 F.2d 967, 969–70 (7th Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Feliz–Cordero,* 859 F.2d at 253–54. When a vehicle is used, "carrying" takes on a different meaning from carrying on the person because the means of carrying is the vehicle itself. *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th

Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989).[4]

■ We agree with the government that constructive possession in the context of this case is synonymous with carrying. *See United States v. Stewart,* 779 F.2d 538, 539 (9th Cir.1985) (rifle under defendant's control in the trunk of his car). Constructive possession does not necessarily equate to carrying. *Evans,* 888 F.2d at 894–95. It can be sufficiently removed from ready access that the facts will not support a conclusion of "carrying." *Id.; Joseph,* 892 F.2d at 126. However, constructive possession will support a conviction for carrying a firearm in a motor vehicle if the operator of the vehicle knowingly possesses the firearm in the vehicle during and in relation to a drug trafficking crime. *See United States v. Perez,* 897 F.2d 751, 754 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990).

■ The trial court should not have included the words "use" and "used" in its instructions to the jury on the firearms counts. However, those words in the charge caused no harm under the record of this case because the only evidence of "use" of the firearms established carrying of the firearms. In other words, appellants were necessarily convicted of carrying the weapons as charged in the indictment. Therefore, whether that same conduct also constituted "use" of the weapons under § 924(c)(1) is immaterial. The minor variation between the words of the indictment and the trial court's instruction to the jury was harmless error. *Cf. Blankenship,* 923 F.2d at 1116 (involving a similar, but reverse, harmless error in a trial court's charge on a gun count).

### IV.

■ As noted earlier, Pineda argues in his brief that he was indicted for and convicted of two acts of carrying a firearm in connection with a single drug trafficking

---

**4.** To the extent that *Cardenas* implies that carrying a weapon in a vehicle requires that the gun be within reach, we disagree.

offense. "Very simply put there were two guns in the car and therefore [Pineda] was charged with two separate offenses." Pineda's Brief at 7. We take this to be a double jeopardy challenge to Pineda's consecutive firearms sentences. We have previously determined that multiple sentences constitute plain error, therefore, we consider Pineda's argument sufficient to raise an issue for review on appeal, even though he failed to raise this objection in the trial court. *United States v. Munoz–Romo*, 947 F.2d 170, 174 (5th Cir.1991); *United States v. Devine*, 934 F.2d 1325, 1342–43 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 349, 116 L.Ed.2d 288 (1991). We recently determined that each firearms count must be linked to a separate drug trafficking offense. *United States v. Privette*, 947 F.2d 1259 (5th Cir.1991). Therefore, we will vacate Pineda's sentences and remand to the trial court so that the government can elect which firearms count to drop and Pineda can be resentenced on the remaining counts.

▮ As for Ramirez, who neither raised the issue in the trial court or on appeal, we nevertheless determine that he must be accorded the same treatment as Pineda. Where plain error is apparent, the issue may be raised *sua sponte* by this court even though it is not assigned or specified. *Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962); *United States v. Adams*, 634 F.2d 830, 836 (5th Cir. Unit A January 1981). As the Supreme Court has recognized,

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

*United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). In this case, the error is both obvious and substantial. *See United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). Fairness as well as judicial economy dictate that we address now this issue that would doubtless otherwise be raised in a subsequent *habeas* proceeding. Accordingly, we will vacate Ramirez's sentences and remand to the trial court so that one of the firearms counts can be dismissed and Ramirez can be resentenced on the remaining counts.

### V.

▮ Also on the subject of counts 3 and 4, appellants complain that the court erred in refusing to include the following instructions in the charge:

> Without proof of more, our law does not prohibit the transporting of two handguns in a vehicle during interstate travel.

and

> Further, you are instructed that mere knowledge that two handguns being transported in a vehicle during interstate travel does not constitute any violation of the law.

Although requested by the trial court, appellants offered no authority at trial to support these instructions as being correct statements of the law. Trial courts are afforded substantial latitude in giving jury instructions. *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir.1990). A court's refusal to include a defendant's proposed instruction is reviewed under an abuse of discretion standard. *Id.* Where, as here, the instructions given fairly cover the issues presented by the case, we will not find an abuse of discretion. *United States v. Mollier*, 853 F.2d 1169, 1174 (5th Cir.1988).

### VI.

▮ After their arrest, each appellant signed a written statement he had dictated to government agents. Ramirez argues that the district court erred in admitting into evidence at trial the written statement by Pineda that "Pedro Duran told me that Carlos Ramirez knew to whom the car was going to be taken in Houston, Texas, because I did not know." A very narrow exception to the hearsay rule exists to allow into evidence statements of a co-conspirator made during the course and in

furtherance of a conspiracy or joint undertaking. *See Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987); *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Because participation in a conspiracy ordinarily ends with arrest, out-of-court declarations made after arrest may not be used at trial against one's co-conspirators. *Wong Sun v. United States,* 371 U.S. 471, 490, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963); *Fiswick v. United States,* 329 U.S. 211, 217, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946); *United States v. Postal,* 589 F.2d 862, 888 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). Although this court has held that such statements may be admissible as non-hearsay if not offered to prove the truth of the matter asserted, we need not make that determination here.[5] *See Postal,* 589 F.2d at 888. The statement in question is cumulative of other testimony at trial. When considered in the context of the trial as a whole, the admission of this hearsay statement was harmless error. *United States v. Bernal,* 814 F.2d 175, 184–85 (5th Cir.1987); *United States v. Brown,* 692 F.2d 345, 350 (5th Cir.1982). Admission of the statement did not constitute a *Bruton* violation, because Pineda testified at trial and was subject to vigorous cross-examination. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

### VII.

■ Appellants next argue that the district court erred in instructing the jury that "except for the instructions to you on the law you may disregard anything I might have said during the trial in arriving at your own findings as to the facts." They argue that the Pattern Jury Instructions mandate use of the word "should" instead of "may." The court instructed the jury

that they must consider only the evidence presented during the trial and that the jury should not assume that the trial judge had formed any opinion on the issues of the case. Moreover, during closing argument the trial judge made this same point and counsel for Ramirez read to the jury the very instruction appellants now question using the word "should" instead of "may." In light of the foregoing, appellants' argument is patently without merit.

### VIII.

■ Finally, appellants argue that the prosecutor made various improper statements in the course of closing argument. This argument, too, is without merit. Criminal convictions are not to be lightly overturned on the basis of a prosecutor's comments standing alone. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Jury argument constitutes reversible error only if it is both inappropriate and harmful. *United States v. Iredia,* 866 F.2d 114, 117 (5th Cir.), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). The burden is on the appellants to show that the comments of the prosecutor affected their substantial rights. *United States v. Lowenberg,* 853 F.2d 295, 302 (5th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989). Here, appellants have failed to demonstrate that any of the prosecutor's remarks were so inflammatory or prejudicial that it constituted reversible error.

We AFFIRM the convictions, VACATE the sentences, and REMAND for sentencing upon all counts remaining after the count selected by the government is dismissed.

---

5. We do note, however, that the trial court instructed the jury that:

> Earlier statements of a witness were not admitted in evidence to prove that the contents of those statements are true. You may consider the earlier statements only to determine whether you think they are consistent or inconsistent with the trial testimony of the

witness. And therefore whether they affect the credibility of that witness.

Even though an instruction that a statement could only be used against the declarant and not a co-defendant would have been more appropriate, appellants did not object to this instruction, which incorporates that idea.