7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elbert PAYNE and Steven Ross, Defendants-Appellants.
 Nos. 92-5381, 92-5413.
 United States Court of Appeals, Sixth Circuit.
 Sept. 22, 1993.
 
 Before: MARTIN and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Elbert Payne and Steven Ross appeal their convictions on drug charges. Specifically, both were convicted for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. In addition, Ross was convicted on three charges of possession with intent to distribute cocaine or cocaine base, in violation of 21 U.S.C. § 841(a)(1). They have raised three issues on appeal: (1) the introduction of conversations on tape of certain telephone calls; (2) the sufficiency of the evidence on conspiracy convictions; and (3) the denial of the motion to suppress filed by the defendant Ross. For the following reasons, we affirm the district court.
 
 Background
 
 2
 In 1990, law enforcement officers conducted drug surveillance operations in Tennessee and Florida. On October 8, 1990, Eric Parker, who was suspected of involvement in drug trafficking, arrived at the Memphis airport and left the airport area in a red Cadillac driven by Ross. Officers followed Parker and Ross to various locations that evening. On October 9, 1990, officers followed Parker and Ross to a Memphis area shopping mall. After arriving at the mall, Ross entered the Oxford Street Clothing Store, returned to the Cadillac, obtained a silver plastic bag, and reentered the store. Payne later left the store with several plastic bags, and departed the mall in a black Mustang driven by an undercover officer.
 
 
 3
 After leaving the mall, Payne directed the undercover officer to a residence. While en route, the officer saw that one of the bags contained two packages of what appeared to be cocaine. Payne entered the residence and delivered some of the contents of the bag. After leaving the residence, Payne directed the undercover officer to a Shoney's restaurant. On the way to Shoney's, Payne inhaled a white, powdery substance from the bag and commented on its strength. Payne and the officer met a third individual, Jones, at Shoney's. Payne gave Jones some of the contents of the bag.
 
 
 4
 Back at the mall, officers saw Parker and Ross leave for a nearby Red Lobster restaurant and then return to the Oxford Street Clothing Store. At this point, officers executed an unrelated arrest warrant on Parker. Ross was detained at the Oxford Store, arrested, notified of his Miranda rights, and transported to a Drug Enforcement Administration office. No drugs were found at the store. A search of the red Cadillac yielded a benign, white, powdery substance and a briefcase containing $30,000.00.
 
 
 5
 At the DEA office, Ross initially refused to make a statement or otherwise cooperate with officers. However, he changed his mind on October 10, 1990, after again hearing his Miranda rights. He then discussed several large cocaine transactions involving himself, Parker, and Tavin Chandler. Ross further apprised officers of his role as fleet manager for Parker and the roles of other codefendants within the trafficking organization. He also told officers about drugs then stored at his residence and admitted to having distributed two kilograms of cocaine from the Oxford Street Clothing Store on the previous day.
 
 
 6
 After their arrests, Ross and Parker agreed to make recorded phone calls for the government. The first of these calls was made on October 9, 1990, and the remaining calls were made the next day. In the first two calls, Parker set up a deal with Chandler. In the third call, Ross further discussed this deal. In the fourth call, Ross and Parker arranged to collect the money from Payne. In the final call, Ross continued the effort to collect this money. Ross later recovered $400.00 from Payne, which he turned over to officers. Ross was subsequently released from custody, told that he would be indicted, and promised that his cooperation would be reported to the U.S. Attorney. Drug searches arising out of the events described above yielded over seven kilograms of cocaine and drug paraphernalia.
 
 
 7
 Payne, Ross, Parker, and others were later indicted for the drug charges. Parker was granted a severance and was tried first. His convictions for conspiracy and possession of cocaine with intent to distribute were later overturned in United States v. Parker, --- F.2d ---- (6th Cir.1993). Payne and Ross were tried with three other codefendants, not involved in this appeal.
 
 Analysis
 
 8
 Ross and Payne argue that the district court erred in admitting the tape-recorded statements of coconspirators. They also challenge the sufficiency of the evidence supporting their conspiracy convictions. Finally, Ross claims that the district court erred in denying his motion to suppress.
 
 
 9
 1. The tape-recorded evidence.
 
 
 10
 The district court admitted tape-recorded evidence gathered by Parker and Ross in cooperation with the government. Ross and Payne claim that the district court erred in admitting this evidence. Statements of the type considered here are admissible if they are "offered against a party ... by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). The determination whether a statement is made "in furtherance of the conspiracy" is factual. United States v. Gessa, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc). Such determinations are reviewed for clear error. Id.
 
 
 11
 Some of the tape-recorded evidence was inadmissible against Ross. First, Parker's statements were inadmissible under Fed.R.Evid. 801(d)(2)(E), as an arrestee's out-of-court declarations cannot be used against his coconspirators. See United States v. Pineda-Ortuno, 952 F.2d 98, 105-06 (5th Cir.), cert. denied, 112 S.Ct. 1990 (1992). Second, Ross's own statements were inadmissible to show his participation in the conspiracy after his arrest, as the conspiracy ended for him upon the arrest. See Parker, --- F.2d at ----. However, it was admissible against him as an admission under Fed.R.Evid. 801(d)(2)(A). The statements of continuing coconspirators (i.e., Chandler and Payne) that were elicited through Ross's efforts were similarly inadmissible to show Ross's participation in the conspiracy after his arrest, but they were admissible against Payne and other codefendants as proof of the conspiracy that was continuing with other participants who were not yet arrested. Finally, the statements of continuing conspirators that were elicited by Parker were inadmissible to show Ross's participation in the conspiracy after the arrest, but were admissible against Payne and other codefendants as proof of the continuing conspiracy.
 
 
 12
 The district court might have erred in admitting the tape-recorded evidence against Ross without a limiting instruction, had Ross requested such an instruction. However, "[w]e cannot say that the court committed plain error in failing to sua sponte issue a limiting instruction because the failure to do so was not so prejudicial as to affect the substantial rights of the appellants." United States v. Rodriquez-Cardenas, 866 F.2d 390, 396 (11th Cir.1989) (rejecting challenge to admission of tape-recorded hearsay), cert. denied, 493 U.S. 1069 (1990); cf. United States v. Cooper, 577 F.2d 1079, 1088-89 (6th Cir.) (Rule 404(b) evidence), cert. denied, 439 U.S. 868 (1978).
 
 
 13
 Most of the tape-recorded evidence was admissible against Payne. First, Chandler's statements were admissible as coconspirator's statements under Fed.R.Evid. 801(d)(2)(E). Second, Payne's statements were admissible as admissions under Fed.R.Evid. 801(d)(2)(A). Third, Ross's and Parker's post-arrest statements to Payne were admissible as adoptive admissions under Fed.R.Evid. 801(d)(2)(B). See United States v. Rollins, 862 F.2d 1282, 1296-97 (7th Cir.1988), cert. denied, 490 U.S. 1074 (1989). However, Ross's and Parker's post-arrest statements to others were inadmissible against Payne. Pineda-Ortuno, 952 F.2d at 106.
 
 
 14
 Similarly, the district court might have erred in admitting the tape-recorded evidence against Payne without a limiting instruction, had Payne requested such an instruction. Again, no request was forthcoming and plain error does not arise from this issue. See Rodriquez-Cardenas, 866 F.2d at 395-96.
 
 
 15
 Ross and Payne also argue that the tape-recorded coconspirator statements should not have been admitted before independent evidence of a conspiracy was shown to exist. However, a trial court may examine all the evidence, including coconspirator's statements, in ruling on the preliminary question of admissibility. United States v. Barrett, 933 F.2d 355, 358 (6th Cir.1991). Therefore, this argument fails.
 
 
 16
 2. Sufficiency of the evidence.
 
 
 17
 Ross and Payne next argue that the evidence was insufficient to support their conspiracy convictions. In evaluating this argument, the court must "determine 'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Warren, 973 F.2d 1304, 1308 (6th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 18
 "The essential elements of conspiracy are that the conspiracy was willfully formed and that the defendant willfully became a member of the conspiracy." United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171 (1987). These elements may be proved by direct or circumstantial evidence. Id. Viewing the evidence in the light most favorable to the government, see id., a rational trier could have found the elements of conspiracy in this case, that is, that a conspiracy to possess and distribute cocaine was willfully formed, and that Ross and Payne willfully joined this conspiracy. Thus, sufficient evidence supports the conspiracy convictions in this case.
 
 
 19
 3. Ross's motion to suppress.
 
 
 20
 Ross finally argues that the district court erred in failing to grant his motion to suppress. First, Ross claims, as he did before the district court, that he was unlawfully interrogated after requesting the assistance of an attorney and refusing to cooperate with DEA agents. Interrogation of an accused who has requested counsel must stop unless the accused initiates further questioning. Edwards v. Arizona, 451 U.S. 477, 484-485, reh'g denied, 452 U.S. 973 (1981). However, officers testified that Ross never requested an attorney and was not interrogated between his initial refusal to cooperate and subsequent consent. Furthermore, the district court denied Ross's motion to suppress "on all ... grounds." This denial presupposes implicit findings which are consistent with the officers' testimony. In reviewing a motion to suppress, this court will uphold a district court's findings unless they are clearly erroneous. See United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991). "We have no basis for rejecting the factual finding implicit in the trial court's decision" denying Ross's motion to suppress. United States v. Pulley, 922 F.2d 1283, 1288 (6th Cir.1991). Accordingly, the district court did not err in refusing to suppress evidence based on Ross's allegations of unlawful interrogation.
 
 
 21
 Second, Ross claims that he was arrested without probable cause. Ross raises this basis for suppression for the first time on appeal. However, Fed.R.Crim.P. 12(b)(3) provides as follows:
 
 
 22
 (b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial.
 
 
 23
 * * *
 
 
 24
 (3) Motions to suppress evidence.
 
 
 25
 Fed.R.Crim.P. 12(b)(3). Because Ross did not base his motion to suppress before the district court on a lack of probable cause, "this court is without jurisdiction to entertain this issue on appeal." United States v. Crismon, 905 F.2d 966, 969 (6th Cir.1990) (citing Fed.R.Crim.P. 12(b)(3), 12(f)).
 
 Conclusion
 
 26
 As indicated herein, codefendant Parker's convictions were reversed. However, that decision does not mandate a reversal here. The case was reversed upon a totality of circumstances. The most serious error was the prejudicial remark by a law enforcement officer that Parker has been charged with a similar offense in Florida. See Parker, --- F.2d at ----. Another prejudicial incident in that trial was the introduction of a photograph of a baby playing with a large sum of money. Neither of these incidents occurred in the Payne-Ross trial.
 
 
 27
 However, two of the problems inherent in that trial are common in the case against Ross, but not Payne. These are the charge that Ross was in the conspiracy after his arrest and the use of the tape-recorded conversations of Ross after he became cooperative. Nevertheless, those two incidents by themselves constitute harmless error against Ross, see Chapman v. California, 386 U.S. 18, 24, reh'g denied, 386 U.S. 987 (1967), and do not apply against Payne. Therefore, any error in admitting the tape-recorded evidence was harmless, sufficient evidence supports the conspiracy convictions, and the district court did not err in denying Ross's motion to suppress.
 
 
 28
 AFFIRMED.