**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-9099

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD JEROME FISHER, a/k/a L.A.
Ron, and DOUGLAS RAY DUNKINS, JR.,
a/k/a Little Doug,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas

May 27, 1994

Before POLITZ, Chief Judge, DAVIS and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Ronald Jerome Fisher and Douglas Ray Dunkins, Jr. appeal their jury convictions of drug violations and their sentences to life imprisonment.  Finding no reversible error, we affirm.

## Background

Fisher headed an operation in Fort Worth, Texas that purchased 50 kilograms of cocaine powder within a two-year period, converted it to cocaine base, and distributed the resultant 20 kilograms of

crack.  Dunkins was a top lieutenant, heavily involved in the manufacturing and distribution aspects of the enterprise.

Along with a score of others, Fisher and Dunkins were indicted for conspiracy to possess with intent to distribute and to distribute cocaine, and to manufacture, possess with intent to distribute and to distribute cocaine base in violation of 21 U.S.C. § 846.  Fisher also was charged with two counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and one count in violation of § 841(b)(1)(B), as well as four counts of money laundering in contravention of 18 U.S.C. § 1956.  Both Fisher and Dunkins were charged with use of a firearm during and in relationship to a drug trafficking crime in violation of 18 U.S.C. § 924(c).  A jury returned verdicts of guilty on all counts.  As a third-time felony drug-offender, Fisher received a mandatory sentence of life imprisonment.[1]  Dunkins was sentenced to life imprisonment under the Sentencing Guidelines.  Both were given a consecutive five-year term of imprisonment on the firearm count.  They timely appealed.

Analysis

1.   Failure to use a special verdict.

For the first time on appeal the defendants complain of the district court's use of a general verdict form for the conspiracy count.  The failure to obtain a special verdict, they argue, makes it impossible to know whether the jury convicted them of conspiracy to traffic in cocaine powder or in crack.  That objection does not

---

[1]21 U.S.C. § 841(b)(1)(A).

invalidate the verdict.  As the Supreme Court taught in **Griffin v. United States**,[2] a conviction on a multiple-object conspiracy count may stand if there is sufficient evidence to support a conviction for conspiracy to accomplish any of the charged objects.  **United States v. Bounds**,[3] on which the defendants rely, does not hold to the contrary.  Any ambiguity arising from the general verdict is relevant solely to sentencing.  In this case, only Dunkins' sentence could be affected; Fisher's convictions of the substantive offense of possession with intent to distribute in excess of 5 kilograms of cocaine mandate life imprisonment under section 841(b)(1)(A).

In **United States v. Cooper**,[4] we recognized that punishment for conviction of a multiple object conspiracy may not exceed the statutory maximum for the offense carrying the least severe penalty.[5]  Dunkins' sentence is not inconsistent with that limitation.  Whether the object offense is possession with intent to distribute 50 kilograms of cocaine or 20 kilograms of cocaine base, the statutory maximum is life imprisonment.

We further held in **Cooper** that U.S.S.G. § 1B1.2(d) governs the application of the Sentencing Guidelines to multiple object

---

[2]112 S.Ct. 466 (1991).

[3]985 F.2d 188 (5th Cir.), cert. denied, 114 S.Ct. 135 (1993).

[4]966 F.2d 936 (5th Cir.), cert. denied, 113 S.Ct. 481 (1992).

[5]The statutory penalty for a section 846 conspiracy is the same as that prescribed for the object offense.  21 U.S.C. § 846.

conspiracies.[6]  Section 1B1.2(d) provides:

> A conviction on a count charging conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count for each offense that the defendant conspired to commit.

The hypothetical counts are then grouped pursuant to Part 3D of the Guidelines.  When the counts constitute part of a common scheme, as here, they are deemed a single group and assigned the offense level for the most serious.[7]  The operation of U.S.S.G. § 1D1.2(d), however, is restricted by Application Note 5 of the Commentary, which states:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy.  In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

That decision, according to the Sentencing Commission, "should be governed by a reasonable doubt standard."[8]

The defendants contend that this scheme permits sentencing for an offense of which they were not convicted.  Their argument overlooks the limitation of the sentence to the statutory maximum for the least severe object offense alleged in the count of

---

[6]But cf. **Bounds**.

[7]U.S.S.G. §§ 3D1.2(b), 3D1.3(a).  The defendants do not dispute the propriety of aggregating the various transactions in a particular drug so U.S.S.G. § 3D1.2(d) is not relevant herein.

[8]Sentencing Guidelines Manual, App. C, Amendment 75; see also **United States v. McKinley**, 995 F.2d 1020 (11th Cir. 1993), cert. denied, 114 S.Ct. 1405 and 114 S.Ct. 1552 (1994).

4

conviction.  That restriction belies their objection.[9]

The district court found "more than sufficient" evidence that Fisher's organization distributed at least 20 kilograms of crack cocaine and that Dunkins, as one of the organization's three principals, knew it.  The court did not expressly make a section 1B1.2(d) beyond-a-reasonable-doubt finding that Dunkins had conspired to traffic in cocaine base as well as cocaine powder, apparently because the issue was not raised.  We agree with our Eleventh Circuit colleagues that section 1B1.2(d) findings must be either explicit or implicit in the record.[10]  Here, reviewing for plain error, we conclude that there was no such error.  There was ample evidence to support the requisite implicit findings and there was no miscarriage of justice.

2.    Jury selection.

Fisher and Dunkins maintained that the government dismissed Cassandra Owens, an African-American member of the venire, because of her race in violation of the holding of **Batson v. Kentucky**.[11] The government contemporaneously explained that it exercised a peremptory challenge against Owens because two members of her family had been arrested for drug offenses.  The defendants challenge that explanation as pretextual because the government did

---

[9]Cf. **United States v. Strong**, 891 F.2d 82 (5th Cir. 1989) (within the statutory limits for the offense of conviction, there is no *per se* rule against consideration of criminal activity not charged in the indictment in fashioning the sentence).

[10]**McKinley**.

[11]476 U.S. 79 (1986).

5

not strike a juror whose son was involved with marihuana or a juror whose husband had been convicted of bribery. We agree with the government that Owens' situation was distinguishable. We will not disturb the district court's credibility call.

Fisher and Dunkins also contend that the district court erred in not excusing for cause a member of the venire who was a personal acquaintance of a police officer who was to testify for the government. We disagree. Personal knowledge of a witness is not a conclusive indicator of actual bias and the person challenged insisted that he could be fair. We find no abuse of discretion in the district court's decision to credit his assurances. Parenthetically, we find the police officer's testimony to be brief and essentially uncontested.[12]

    3.   <u>Sufficiency of the evidence supporting firearms conviction</u>.

Both defendants challenge the sufficiency of the evidence that they used or carried a firearm during and in relationship to a drug trafficking offense. The government need not prove affirmative use of a firearm to establish a violation of 18 U.S.C. § 924(c); it is enough if "the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking."[13]

---

[12]<u>Cf</u>. **United States v. Munoz**, 15 F.3d 395 (5th Cir. 1994) (particular care must be taken to guard against juror bias in favor of law enforcement officers when the case pits police testimony against that of a defense witness), <u>petition for cert. filed</u> (U.S. Apr. 25, 1994) (No. 93-8841); **Cook v. United States**, 379 F.2d 966 (5th Cir. 1967) (trial court should have asked whether any member of the panel knew the government's principal witness so that the defense could exercise its peremptory challenges intelligently).

[13]**United States v. Raborn**, 872 F.2d 589, 595 (5th Cir. 1989).

A rational jury easily could have so found herein.

Victor Costa testified that while negotiating a sale of cocaine to Fisher on December 28 or 29, 1990, Fisher was carrying "a very big gun behind his belt." A few days later a police officer encountered Fisher carrying a loaded 9 mm. Beretta pistol. Shelly Gene Franklin, the third principal in the Fisher triumvirate, testified that Fisher usually carried a gun for protection in the course of his drug trafficking activities. The evidence was sufficient to support Fisher's conviction.

Four firearms were found in a search of Dunkins' residence: a 9 mm. Taurus pistol, a .25 caliber Beretta pistol, a .357 caliber Taurus revolver, and a .223 caliber Ruger rifle. All were at readily accessible locations in the master bedroom and all except the rifle were loaded; the magazine and ammunition for the rifle were located nearby. Also found during the search were stacks of cash. Trial testimony established that Dunkins' residence was used for converting powdered cocaine into crack and for distributing the finished product to street dealers. Dunkins told investigators that he kept the weapons for protection. The jury appropriately could have inferred that "protection" included protection of the illegal activities.[14] This assignment of error has no merit.

4. Evidentiary rulings.

The defendants contend that the district court erred in admitting out-of-court statements of coconspirators without expressly finding the predicate facts required by Rule 801(d)(2)(E)

---

[14]See **United States v. Pace**, 10 F.3d 1106 (5th Cir. 1993).

7

of the Federal Rules of Evidence.  The district court may defer its Rule 801(d)(2)(E) findings until the close of the government's case but it is error to omit such findings altogether.  We recognized in **United States v. Fragoso**,[15] however, that the error can be harmless. We find it harmless here.

The defendants also object to two fleeting allusions by government witnesses to gangs and one to heroin and marihuana. These objections are groundless.  The remarks, which were isolated and cursory, could not have affected the verdict in light of the overwhelming evidence of guilt.[16]  Furthermore, where requested, the district court cured any error by admonishing the jury.

5.    Validity of the searches.

Dunkins challenges the validity of the warrants authorizing the searches of his residence and rental storage locker, contending that the supporting affidavits did not establish the reliability of information linking Dunkins to the Fisher network.  We disagree.

Under the good faith exception, we will uphold a search if the officer's reliance on a search warrant was reasonable.  Warrants based on affidavits "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" do not fall within the exception.[17]  In determining the sufficiency of an affidavit we examine the totality of circumstances, including

---

[15]978 F.2d 896 (5th Cir. 1992), cert. denied, 113 S.Ct. 1664 (1993).

[16]See **United States v. Gadison**, 8 F.3d 186 (5th Cir. 1993).

[17]**United States v. Satterwhite**, 980 F.2d 317, 320 (5th Cir. 1992), quoting **United States v. Leon**, 468 U.S. 897, 923 (1984).

8

the veracity, reliability, and basis of knowledge of a confidential informant.[18]  One means of establishing the reliability of information provided by a confidential informant is corroboration; we deem an informant who "is right about some things . . . more probably right about other facts."[19]  Applying this rubric, we find that reliance on the warrants issued herein was reasonable.

The affidavit supporting the warrant to search Dunkins' residence states that six months before a confidential informant had obtained four to five kilograms of cocaine and cocaine base at the residence.  In the course of the transaction the informant heard Dunkins open a safe reportedly purchased by Fisher to protect drugs and drug proceeds.  According to the informant, Dunkins and Franklin were key members of Fisher's drug-distribution network; one of the businesses used to launder proceeds, "Doug and Ron's Custom Jewelry," was registered in Fisher and Dunkins' names.  The informant also reported that Costa supplied Fisher with cocaine in late 1990 and early 1991, and talked of Fisher's lavish spending habits, including a spree at the Footlocker athletic shoe store.

As Dunkins notes, the affidavit does not vouch for the informant's veracity.  It reflects, however, a first-hand basis of knowledge with respect to the reported drug purchases.  Other aspects of the informant's report are corroborated.  Costa

---

[18]**United States v. Broussard**, 987 F.2d 215 (5th Cir. 1993), abrogated on other grounds by **J.E.B. v. Alabama ex rel. T.B.**, 114 S.Ct. 1419 (1994).

[19]**Illinois v. Gates**, 462 U.S. 213, 244 (1983) (internal citation omitted).

confirmed that he had sold Fisher and Franklin a substantial quantity of cocaine during the period identified by the confidential informant. An undercover officer placed Dunkins at the center of the network; he observed his contact obtain price quotations from an office occupied by Fisher, Franklin, and Dunkins. Other investigative efforts revealed an assumed name certificate for Doug and Ron's Custom Jewelry issued to Dunkins and Fisher, and the delivery of mail addressed to that entity at Dunkins' home. Two of the firearms found at Fisher's residence were traced to Dunkins. Consistent with the informant's report of a spending spree at the Footlocker, agents also found 40 pairs of athletic shoes at Fisher's home. We have before us more than a "barebones" affidavit; the affidavit was sufficient to justify official belief in the validity of the warrant.

During the search a narcotics dog alerted on several areas of the house and agents found a trace of white powder believed to be cocaine, four firearms, and $16,000 in cash. They also discovered a receipt for rental of a storage locker for which they secured a search warrant. Dunkins challenges this second warrant. Again his challenge lacks merit. Agents found evidence of drug-dealing at Dunkins' residence but not drugs or records. An experienced DEA agent attested that narcotics traffickers routinely use rented storage space to hide drugs, proceeds, and records. Under those circumstances, it was reasonable for the officer to believe that the affidavit inferred a nexus between Dunkins' illegal activity

and the storage locker.[20]  The evidence seized in both searches was admissible.

6.  <u>Constitutionality of harsher penalties for cocaine base</u>.

Finally Fisher and Dunkins contest the constitutionality of the disparity between the penalties for trafficking in powdered cocaine and cocaine base; the statute treats the latter more harshly, as do the Guidelines.  We previously have rejected the due process, equal protection, and vagueness challenges asserted herein.[21]  We now reject an eighth amendment challenge.  The penalties for cocaine base transactions, while harsher than those for cocaine transactions, are not grossly disproportionate to the severity of the offense,[22] considering that cocaine base "concentrates and magnifies the effect of one gram of cocaine to such a degree that dealers profitably can sell it in very cheap yet still-potent quantities."[23]  The impact of crack cocaine is devastating; Congress' decision to punish more severely those who traffic in it is well warranted.  We reject this last assignment of error.

AFFIRMED.

---

[20]<u>See</u> **United States v. Pace**, 955 F.2d 270 (5th Cir. 1992).

[21]<u>See</u> **United States v. Watson**, 953 F.2d 895 (5th Cir.), <u>cert</u>. <u>denied</u>, 112 S.Ct. 1989 (1992); **United States v. Thomas**, 932 F.2d 1085 (5th Cir.), <u>cert</u>. <u>denied</u>, 112 S.Ct. 264 and 112 S.Ct. 428 (1991), and 112 S.Ct. 887 (1992).

[22]<u>See</u> **McGruder v. Puckett**, 954 F.2d 313 (5th Cir.) (adopting a threshold test of "gross disproportionality" in the wake of **Harmelin v. Michigan**, 501 U.S. 957 (1991)), <u>cert</u>. <u>denied</u>, 113 S.Ct. 146 (1992).

[23]**Thomas**, 932 F.2d at 1090; <u>see</u> <u>also</u> **Watson**.