**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Craig Michael COSCARELLI, also known as John Coscarelli, Defendant–Appellee.**

No. 96–20264.

United States Court of Appeals, Fifth Circuit.

Feb. 3, 1997.

---

Jeffery Alan Babcock, Paula Camille Of-
fenhauser, Assistant U.S. Attorney, U.S. At-
torney's Office, Houston, TX, for plaintiff-
appellant.

Ray Christopher Goldsmith, Houston, TX,
for defendant–appellee.

Before REYNALDO G. GARZA, JONES
and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Craig Michael Coscarelli pleaded guilty to
an indictment charging him in Count I with
conspiracy to commit wire fraud, mail fraud,
money laundering, and the use of fictitious
names in a mail fraud scheme. The govern-
ment appeals from the sentence imposed
upon Coscarelli, contending that the district
court improperly applied United States Sen-
tencing Guidelines (U.S.S.G.) § 2F1.1, the
provision for offenses involving fraud or de-
ceit, in calculating the term of Coscarelli's
imprisonment. The government argues that
the district court should have used U.S.S.G.
§ 2S1.1, the money laundering and monetary

transaction reporting provision, to calculate Coscarelli's offense level in this case. For the forthcoming reasons, we VACATE the sentence imposed by the district court and REMAND for repleading and, if necessary, resentencing in accordance with this opinion.

## BACKGROUND

Beginning in 1993, Coscarelli and others were involved in a telemarketing-fraud scheme. Using fictitious business monikers, the co-conspirators purchased lists of names, telephone numbers, and addresses of persons who had previously participated in telemarketing "sweepstakes." The co-conspirators used telephone banks operating out of sham telemarketing businesses or "reload rooms" from various addresses in and around Houston. These reload rooms were used to make calls to potential victims. The telemarketers contacted potential victims and told them that they had won a contest and that they were to receive various awards. A telemarketer would explain that the award would be sent after the "winner" mailed a check, payable to one of the fictitious companies, to a "mail drop" address in California, Florida or Texas, allegedly to cover taxes and other shipping costs necessary to send the prize.

Coscarelli was responsible for collecting the cash from the money orders and checks cashed in California, Florida, and Texas and routing the money back to himself. Coscarelli then distributed the proceeds to the other co-conspirators. The record reflects that victims sent $915,143.56 to the fictitious companies of this telemarketing scheme. The indictment alleged that Coscarelli encouraged the telemarketers to use fictitious names in order to conceal their identities from the victims and law enforcement agencies. Coscarelli further concealed and frequently changed the locations of the reload rooms.

He also changed the telephone numbers of the fictitious companies.

Furthermore, Coscarelli and others were responsible for distributing the proceeds of the fraud to themselves, to the individual telemarketers, and to pay for the operating expenses of the reload rooms. Coscarelli was the person who executed applications for mail drops, filed records with the Secretary of the State of Texas for at least one of the fictitious companies, and executed lease agreements for the reload rooms.

This scheme ended in late 1994 with the arrest and indictment of Coscarelli and other co-conspirators. In an 11–count indictment, Coscarelli was charged in Count I with conspiracy to commit wire fraud, mail fraud, using fictitious names in a scheme to defraud, and money laundering in violation of 18 U.S.C. §§ 371, 1341, 1342, 1343, and 1956(a)(1)(A)(i). Each of counts two through 11 contained a substantive offense for all but one of those offenses stated in the conspiracy count. Money laundering, included as an offense in the conspiracy count, was not the subject of a separate substantive count in the indictment.

In June 1995, Coscarelli pleaded guilty to all 11 counts. There was no written plea agreement prepared. At the Rule 11 plea hearing, the district court explained that "on each of the 11 counts to which you've indicated you wish to plead guilty the maximum penalty is imprisonment for up to five years and a fine of not more than $250,000 . . . ."

After Coscarelli pleaded guilty, the probation department prepared its presentence investigation report ("PSI"). The probation department calculated Coscarelli's base offense level in the PSI using the money laundering guideline, U.S.S.G. § 2S1.1, for this multiple-object conspiracy. The PSI used U.S.S.G. § 3D1.2(d),[1] comment. (ns. 4 & 8), § 2X1.1, and § 2S1.1 in arriving at a base

---

1. Section 3D1.2 provides:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

    *    *    *    *    *    *

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved,

or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. . . .

U.S.S.G. § 3D1.2(d). Subsection (d) then lists the offense guidelines which are grouped together and those which are expressly excluded from this subsection.

offense level of 27. Section 2S1.1 scored Coscarelli's offense level at 23, adjusted upward by four levels under 2S1.1(b)(2)(E) because the amount of money involved exceeded $600,000 but was less than $1 million. The probation department recommended that Coscarelli also receive a four-level upward adjustment for his aggravated role in the offense under U.S.S.G. § 3B1.1(a) to reach a total offense level of 31. He did not receive a downward adjustment for acceptance of responsibility. With a total offense level of 31 and a criminal history category II, the Guidelines called for a punishment range of 121–151 months.

Coscarelli's objection to the PSI stated that:

> Mr. Coscarelli was not charged with money laundering as a substantive count and Mr. Coscarelli did not knowingly or intentionally commit money laundering. Any money laundering that occurred was incidental to the main misconduct of wire and mail fraud via telemarketing.

As a result, Coscarelli argued that U.S.S.G. § 2X1.1 requires that the district court use U.S.S.G. § 2F1.1, instead of U.S.S.G. § 2S1.1, to calculate his base offense level.

At the sentencing hearing, the district court sustained Coscarelli's objection, concluding that the fraud guideline, U.S.S.G. § 2F1.1, rather than the money laundering guideline, U.S.S.G. § 2S1.1, should govern the calculation of Coscarelli's base offense level. Over the government's objection, the district court ruled that Coscarelli had not been charged with a substantive count of money laundering and he "did not knowingly commit money laundering." The district court found that the fraud guidelines more accurately described the conduct in this case than did the money laundering guidelines.

The district court, applying the fraud guidelines, found Coscarelli's base offense level to be 23. With a criminal history category of II, Coscarelli's Sentencing Guideline calculation showed a punishment range of 51–63 months. The district court then imposed a sentence of 63 months. The government filed a timely notice of appeal.

### DISCUSSION

■ Challenges to the district court's application of the sentencing guidelines are reviewed *de novo*. *United States v. Brown*, 54 F.3d 234, 240 (5th Cir.1995). The district court's factfindings in support of its application of the guidelines are reviewed for clear error. *Id.*

*1. The Application of U.S.S.G. § 2S1.1 to a Multiple–Object Conspiracy*

■ The government contends that the district court erred by sustaining Coscarelli's objection to the use of U.S.S.G. § 2S1.1, the money laundering guideline, in calculating his base offense level. The government specifically charged Coscarelli in Count I of the indictment with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).[2] The government contends that the district court erred by focusing on the government's decision not to charge Coscarelli with a substantive count of money laundering and by relying on the absence of money laundering allegations in the indictment to rule that the fraud guideline should be used in sentencing Coscarelli. The government argues that it is not required to allege a substantive money laundering count for § 2S1.1 to apply. *See* U.S.S.G. § 3D1.2 comment. (n.8); 18 U.S.C. § 1956(h); *see also United States v. Acanda*, 19 F.3d 616, 617–20 (11th Cir.1994) (applying § 2S1.1 to a conspiracy conviction under 18 U.S.C. § 371 where the substantive count of money laundering under § 1956(a)(1)(A) was dismissed pursuant to a plea agreement). As such, the government maintains that the district court misapplied the guidelines because Coscarelli's guilty plea to the allegations of conspiracy

**2.** 18 U.S.C. § 1956(a)(1)(A)(i) states:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of a specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; ...

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

to commit money laundering in the indictment was sufficient to show his involvement in the money-laundering object of the conspiracy.

Coscarelli contends that U.S.S.G. § 2X1.1 requires us to look to the base offense level of the substantive count to determine the base offense level for a conspiracy (18 U.S.C. § 371) arising from that substantive offense. Section 2X1.1, Application Note 2, states that the substantive offense is the offense that the defendant was convicted of soliciting or conspiring to commit. Coscarelli did not plead guilty to the substantive offense of money laundering because that substantive offense was not included in the indictment. As such, Coscarelli contends that the district court correctly concluded that the fraud guideline, § 2F1.1, was the appropriate guideline to apply.

Coscarelli also notes that the district court correctly determined which purpose or purposes of the conspiracy were supported by the evidence and which offenses were proven beyond a reasonable doubt. Based on Coscarelli's plea, the district court properly concluded that the fraud guideline more appropriately applies to the conduct at issue for sentencing purposes.

Further, Coscarelli argues that the district court did not base its decision solely on the lack of a substantive money laundering count. Coscarelli contends that the district court also relied on his objection which noted that the object of the conspiracy was unclear. The district court's findings implied that insufficient proof existed to justify sentencing Coscarelli under the money laundering guidelines.

We begin our analysis by noting that Coscarelli pleaded guilty as charged to the indictment. Count I of the indictment charged him with violating 18 U.S.C. § 371 by conspiring to commit mail fraud, wire fraud, money laundering, and using a fictitious name in connection with a scheme to defraud. When calculating a sentence for a violation of 18 U.S.C. § 371, the United States Sentencing Commission Guidelines direct us first to U.S.S.G. § 2X1.1. Section 2X1.1(a) provides that the sentence imposed should be calculated by using:

The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

U.S.S.G. § 2X1.1(a). We hold that the indictment alleged more than sufficient facts to support a conviction for money laundering and the other object offenses listed under Count I. However, because Count I alleges multiple objects for the conspiracy, we must determine which substantive offense will be used for purposes of calculating Coscarelli's sentence.

In determining which substantive offense guideline to apply to a multiple-object conspiracy, this Court has held that U.S.S.G. § 1B1.2(d) governs. *United States v. Fisher*, 22 F.3d 574, 576 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 529, 130 L.Ed.2d 433 (1994). Section 1B1.2(d) provides:

A conviction on a count charging conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

U.S.S.G. § 1B1.2(d). As *Fisher* reminds us, "the operation of U.S.S.G. § 1B1.2(d) is restricted by Application Note 5 of the Commentary." *Fisher*, 22 F.3d at 576–77. Note 5 states:

Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense. Note, however, if the object offenses specified in the conspiracy count would be grouped together under § 3D1.2(d) (*e.g.*, a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis, because § 1B1.3(a)(2) governs consideration of the defendant's conduct.

U.S.S.G. § 1B1.2(d) comment. (n.5). In this case, the plea does not establish which offense is the object of the conspiracy. According to Application Note 5, to use § 1B1.2(d) in calculating Coscarelli's base offense level, we must analyze whether the court, sitting as a trier of fact, would convict the defendant of conspiring to commit the object offense of money laundering.

However, this analysis is unnecessary if the counts would be grouped together under U.S.S.G. § 3D1.2(d). *See* U.S.S.G. § 1B1.2(d) comment. (n.5). Therefore, we will first look to § 3D1.2 of the Guidelines to determine whether § 3D1.2(d) applies. Section 3D1.2 states:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2. Application Note 8 of U.S.S.G. § 3D1.2 provides further guidance:

> A defendant may be convicted of conspiring to commit several substantive offenses and also of committing one or more of the substantive offenses. In such cases, treat the conspiracy count as if it were several counts, each charging conspiracy to commit one of the substantive offenses. *See*

§ 1B1.2(d) and accompanying commentary. Then apply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy that would constitute behavior of a substantive nature.

U.S.S.G. § 3D1.2 comment. (n.8). Here, Coscarelli pleaded guilty to all 11 counts of the indictment. Consequently, we must treat the conspiracy count as if it were divided into several counts, each charging Coscarelli with conspiring to commit a separate substantive offense. *See* U.S.S.G. § 3D1.2 comment. (n.8).

■ Next, we must apply the ordinary grouping rules to determine the combined offense level based on the substantive counts of conviction and the various acts alleged by the conspiracy count. We hold that, under the grouping rules of U.S.S.G. § 3D1.2(d), the conspiracy to commit mail fraud, wire fraud, the use of a fictitious name, and money laundering are to be grouped together because all of these offenses' base offense levels are determined largely on the total amount of harm or loss. *See* U.S.S.G. §§ 2F1.1, 2S1.1. Having grouped the conspiracy offenses under § 3D1.2(d), we turn next to U.S.S.G. § 3D1.3. That section requires us to apply the highest offense level of the counts in the group, in this case, the money laundering guideline, U.S.S.G. § 2S1.1. *See* U.S.S.G. § 3D1.3(b) and comment. (n.3). Having completed our *de novo* review of the district court's application of the Sentencing Guidelines, we hold that the district court erred in calculating Coscarelli's base offense level using the fraud guideline, § 2F1.1. Because we have grouped these offenses under U.S.S.G. § 3D1.2(d), we do not need to use the analysis set forth in Application Note 5 of § 1B1.2, which provides that, in order to treat a defendant as if he had been convicted on a separate count of conspiracy for each offense that he conspired to convict, the district court, sitting as a trier of fact, must determine whether the facts alleged are sufficient to convict the defendant of conspiring to commit money laundering. *See* U.S.S.G.

§ 1B1.2 comment. (n.5).[3] Even if we were to engage in such an analysis, the facts alleged in the indictment show that Coscarelli engaged in money laundering beyond a reasonable doubt.

The district court applied U.S.S.G. § 2F1.1, the fraud guideline, because "Mr. Coscarelli was not charged with money laundering as a substantive count and did not knowingly commit money laundering." The district court also stated that the fraud guideline more accurately described the conduct in this case than the money laundering guideline. However, Coscarelli pleaded guilty as charged to all 11 counts of the indictment. Even without considering the facts developed by the probation officer's investigation, the facts in the indictment alone show that Coscarelli engaged in money laundering.

To obtain a conviction for money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), the government must prove " '[t]hat the defendant 1) conducted or attempted to conduct a financial transaction, 2) which the defendant knew involved the proceeds of unlawful activity, 3) with the intent [either] to promote or further unlawful activity' or to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity." *United States v. West*, 22 F.3d 586, 590–91 (5th Cir.) (quoting *United States v. Ramirez*, 954 F.2d 1035, 1039 (5th Cir.), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3010, 120 L.Ed.2d 884 (1992)), *cert. denied*, —— U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994). All of the facts necessary to support a conviction for money laundering are set out in the indictment. The indictment alleged that Coscarelli and others caused checks and money orders received from the victims to be picked up at various mail drops and delivered to check cashing facilities. Coscarelli then collected the proceeds of this fraudulent scheme and paid the coconspirators, the telemarketers, and general operating expenses

of the scheme. Therefore, even if we were to engage in the analysis set forth in Application Note 5 of U.S.S.G. § 1B1.2(d), we would nevertheless hold that § 2S1.1 should have been applied to calculate Coscarelli's base offense level. Coscarelli knowingly conducted financial transactions using the proceeds of this unlawful telemarketing scheme with intent to promote or carry on the unlawful activity of the scheme in direct violation of 18 U.S.C. § 1956(a)(1)(A)(i).

Therefore, after reviewing the district court's application of the Sentencing Guidelines *de novo*, we hold that the district court misapplied the Sentencing Guidelines by using the fraud guidelines to calculate Coscarelli's sentence.

### 2. The Rule 11 Hearing

Our inquiry does not end with the determination that the district court erred in calculating Coscarelli's base offense level. Our examination of the sentencing issue appealed by the government necessitated a thorough review of the events which transpired at the Rule 11 plea hearing in this case. That examination disclosed a problem which we conclude requires our *sua sponte* consideration in order that justice be served in this case. *See Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962) (recognizing the Court's power to sua sponte notice and correct a plain error even though it was not assigned or specified); *United States v. Pineda–Ortuno*, 952 F.2d 98, 105 (5th Cir.1992) ("Where plain error is apparent, the issue [Rule 11] may be raised sua sponte by this court even though it is not assigned or specified."); *United States v. Adams*, 634 F.2d 830, 836–838 (5th Cir.1981) (quoting *Silber*, the Court recognized that " 'appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seri-

---

**3.** The general rule in sentencing is that facts need not be proven beyond a reasonable doubt. *United States v. Carreon*, 11 F.3d 1225, 1240 n. 71 (5th Cir.1994)("[T]he general burden of proof for sentencing facts is a preponderance of the evidence."). However, in multiple-object conspiracy cases under U.S.S.G. § 1B1.2, the gov-

ernment must prove that the object-conspiracy offense carrying the most severe punishment was committed beyond a reasonable doubt in order for the court to apply that section of the Guidelines with the greater punishment range. *Fisher*, 22 F.3d at 576 & n. 8.

ously affect the fairness, integrity or public reputation of judicial proceedings.' ").

The district court's violation of Rule 11 is obvious from the face of the record. The district court never informed Coscarelli of the correct maximum possible statutory penalty. *See United States v. Watch,* 7 F.3d 422, 428 (5th Cir.1993) (holding that Rule 11 error occurred when the district court failed to inform the defendant of the statutory minimum sentence for the charges); *and see United States v. Still,* 102 F.3d 118, 122–123 (5th Cir.1996), *United States v. Herndon,* 7 F.3d 55, 57 (5th Cir.1993), *United States v. Whyte,* 3 F.3d 129, 130 (5th Cir.1993) (holding same). Therefore, we may review sua sponte the district court's violation of Rule 11 as the error is obvious and it affects "the fairness, integrity or public reputation of judicial proceedings." *Silber,* 370 U.S. at 718, 82 S.Ct. at 1288; *Pineda–Ortuno,* 952 F.2d at 105; *Adams,* 634 F.2d at 836. We begin our review with an analysis of the Rule 11 requirements.

Federal Rule of Criminal Procedure 11(c)(1) provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following: ... the mandatory minimum penalty provided by law, if any, and *the maximum possible penalty provided by law.* ... (Emphasis added.)

FED.R.CRIM.P. 11(c)(1). "This Court has long analyzed Rule 11 as addressing three 'core concerns': (1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of his plea." *United States v. Johnson,* 1 F.3d 296, 300 (5th Cir.1993) (en banc). We review mistakes made by the district court during the Rule 11 colloquy for harmless error. *Id.* at 302. "To determine whether a Rule 11 error is harmless [ ], we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *Id.*

At the plea hearing, the following colloquy took place:

> THE COURT: Do you understand that the offenses to which you've indicated you wish to plead guilty are felony offenses and that if your plea is accepted and you are adjudged guilty those offenses[,] that the adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess a firearm of any kind?

> THE DEFENDANT: Yes, your honor.

> THE COURT: All right. The indictment consists of 11 counts, *on each of the 11 counts to which you've indicated you wish to plead guilty the maximum possible penalty is imprisonment for up to five years* and a fine of not more than $250,000, in addition, the government—in addition, the court may assess a special—will assess a special assessment of $50 per count; additionally, the court may impose a period of supervised release not to exceed three years. Do you understand that, sir? (Emphasis added.)

Coscarelli acknowledged that he understood the ramifications of his plea.

Count I charged Coscarelli with violating 18 U.S.C. § 371 by conspiring to commit wire fraud, mail fraud, use a fictitious name in connection with a scheme to defraud, and money laundering. 18 U.S.C. § 371 provides that a defendant "shall be fined under this title or imprisoned not more than five years, or both." The statutes defining the multiple objects of wire fraud, mail fraud, and the use of a fictitious name in a scheme to defraud, provide that a defendant shall be fined or imprisoned not more than five years or both. However, 18 U.S.C. § 1956(a)(1)(A)(i) defining money laundering states that a defendant "shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisoned for not more than twenty years, or both." Moreover, 18 U.S.C. § 1956(h) expressly states that the punishment for a conspiracy to violate any part of § 1956 shall be the same as the substantive offense.

We must answer two questions. First, in determining whether the district court correctly informed Coscarelli of the maximum penalty he faced under Count I, this Court is faced with the question of whether, in a charge which contains a multiple object conspiracy, a district court must explain the possible maximum penalties for each object of that conspiracy. Second, assuming the district court erred in failing to inform Coscarelli about the statutory maximum sentence for money laundering, we must determine whether that error was harmless.

The first question presents a case of first impression for this Court. We find *United States v. Watch*, 7 F.3d 422 (5th Cir.1993), instructive. Watch was charged with knowingly and intentionally possessing cocaine with intent to distribute at least 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and with carrying a firearm during the commission of that offense in violation of 18 U.S.C. § 924(c). *Id.* at 424. A superseding information was prepared which charged Watch with knowingly and intentionally possessing cocaine with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). *Id.* at 425. The superseding information did not mention a quantity of drugs involved in the offense. Watch entered an agreement to plead guilty to the information in exchange for the government agreeing to dismiss the original indictment at sentencing and refraining from prosecuting Watch for other drug and firearm offenses arising out of the conduct leading to his arrest. *Id.* Watch argued on appeal that the district court erred by failing to inform him of the mandatory minimum penalty provided by law for 18 U.S.C. § 841(b), which states that violations of § 841(a) involving 50 or more grams of cocaine base are punishable by a term of imprisonment of not less than ten years.

In *Watch*, we held that a district court was required to inform the defendant of any possible statutory minimum sentence he might face as a result of application of the quantity-based Guidelines. *Watch*, 7 F.3d at 429. Applying the standards set out in *United States v. Johnson*, 1 F.3d 296 (5th Cir.1993) (en banc), we held that, by failing to advise a defendant that he might be subject to statutorily required sentences, a district court misleads a defendant as to the possible term of imprisonment for his guilty plea and, as a result, the district court fails to satisfy Rule 11. *Watch*, 7 F.3d at 429.

■ Similarly, in the case *sub judice*, the district court did not address the 20-year maximum statutory sentence which might be imposed by one of the object offenses listed in the conspiracy count, 18 U.S.C. § 1956. We hold, therefore, that when faced with informing a defendant of the penalties provided by certain statutes which the government has elected to throw together under a multiple-object conspiracy count, the district court must inform a defendant of the minimum and maximum penalties provided for each offense listed under that multiple-object conspiracy count. The burden of compliance with Rule 11 falls primarily upon the district court, but we note that, in this case, the government created the misleading circumstances in Count I by alleging a multi-object conspiracy relating to offenses with statutory maximums ranging from five to 20 years. The government also compounded the problem by attempting to allege a conspiracy to engage in money laundering under the general conspiracy statute (18 U.S.C. § 371) when money laundering has a separate conspiracy statute (18 U.S.C. § 1956(h)) under which such a conspiracy carries the same maximum punishment as money laundering itself, i.e. 20 years.[4] Finally, for reasons

---

4. In addition to money laundering there are numerous other federal crimes which have separate conspiracy statutes as to those particular crimes; and the maximum punishments for these conspiracies are higher than the five year maximum of the general conspiracy statute, 18 U.S.C. § 371. We note the following occasions when defense counsel and district judges need to be especially alert as to the manner in which the government alleges the conspiracy:

18 U.S.C.

| | | |
|---|---|---|
| § 241 | Conspiracy against civil rights | any term of years or life |
| § 286 | Defraud government on claims | 10 years |
| § 757 | To aid escape of prisoner of war | 10 years |

known only to the prosecutor, the government in this case elected not to assert a separate substantive count of money laundering against Coscarelli but made allegations which if proven would seem to have supported a charge of the substantive offense itself. Had the government alleged a separate substantive count of money laundering or had the government alleged a separate conspiracy count as to money laundering under the correct statute, we are confident the district court would have mentioned the 20 year maximums of these statutes during the Rule 11 colloquy. Instead the government camouflaged the impact of the money laundering conspiracy by pleading it as a part of a § 371 conspiracy; and then stood mute and made. no attempt whatsoever at the Rule 11 hearing to point out that the district court was not properly informing Coscarelli as to the maximum sentence involved in the multi-object single-conspiracy count.

The dramatic impact which the statutory maximum penalty for conspiracy to engage in money laundering is self evident from a comparison of the base offense level of the guideline § 2S1.1 (money laundering) which is 23 with the base offense level of guideline § 2F1.1 (wire fraud) which is 6. Because of this effect, the inclusion of any money laundering count may significantly increase the final guideline sentence, and we are deeply concerned that unless the money laundering count is separately stated, there is a serious potential for mistake on the part of the district court in conducting the Rule 11 colloquy, just as occurred in this case. We recognize that the government has broad latitude in framing the counts of an indictment; but we think that latitude must be limited when it conflicts with the serious prophylactic purposes of the Rule 11 colloquy, i.e. making sure that a defendant's guilty plea was made voluntarily, with understanding of the charges against him and with full awareness of the consequences of his plea.

We turn next to our second question: whether the district court's failure to inform Coscarelli about the statutory maximum penalty for money laundering was harmless error. In making this determination, we may only consider the Rule 11 transcript, and certain portions of the sentencing hearing. *Johnson,* 1 F.3d at 302. Applying the principles set forth in *Johnson,* it is clear that Coscarelli did not know or understand that he was facing a substantially greater maximum sentence than the five year maximum explained by the district court.[5] The record indicates only that Coscarelli understood that he could be sentenced to imprisonment for up to five years. The record does

| | | |
|---|---|---|
| § 794(c) | To give information to foreign government | any term of years or life |
| § 1201(c) | Kidnaping | any term of years or life |
| § 2271 | To destroy vessels | 10 years |
| § 2384 | Seditious conspiracy | 20 years |
| § 2388(b) | To cause insubordination | 20 years |
| § 2153(b) | Destruction of war materials | 30 years |
| § 2154(b) | Production of defective war materials | 30 years |

21 U.S.C.

| | | |
|---|---|---|
| § 946 | To commit offense under Title 21 Chap. 13 subchapter I relating to controlled substances | same as offense |

**5.** In addition to being a violation of Rule 11, the failure to so notify Coscarelli of the possible maximum statutory sentence is also a violation of due process under the Constitution. *See United States v. Guerra,* 94 F.3d 989, 995 (5th Cir.1996). In *Guerra,* we held that the failure to correctly notify a defendant of the possible statutory penalty he faced by pleading guilty rendered the plea invalid because the defendant did not fully understand the consequences of his plea. *See McMann v. Richardson,* 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970); *United States v. Rivera,* 898 F.2d 442, 447 (5th Cir. 1990); *Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir.1982). As in *Guerra,* there is nothing in the record here to suggest that Coscarelli ever received the correct information regarding his exposure to a twenty year sentence from his counsel or the district court. As such, Coscarelli could not have knowingly and intelligently entered his plea when he based that plea on an understanding that the maximum sentence that could be imposed was five years. Thus, the plea is rendered invalid.

not show that Coscarelli knew or understood that he could be imprisoned for up to 20 years under the money laundering object of the conspiracy. We hold, therefore, that Coscarelli did not fully understand the consequences of his plea and his rights were therefore substantially affected. Consequently, Coscarelli's conviction and sentence must be vacated and his case remanded for repleading. *See Watch*, 7 F.3d at 429 (vacating and remanding for repleading due to a failure to satisfy Rule 11 ).

Our colleague in dissent chastises us rather sharply for considering the Rule 11 problem *sua sponte* and for not concluding that the error we found was harmless. We respond briefly to these charges.

This case comes to us by reason of the government exercising its right to appeal the sentence fixed by the district court on the grounds of erroneous application of the guidelines. We have determined that the government correctly asserts that the money laundering guideline (§ 2S1.1) should have been used to determine the sentence in this case and that the district court erred in using the wire fraud guideline (§ 2F1.1); and that the correct guideline range for Coscarelli's sentence in this case should have been 121–151 months (10 years to 12½ years). In so doing, we recognized that the correct sentence could be twice as long as the actual sentence (63 months) assessed by the district court. We checked the Rule 11 colloquy to determine if Coscarelli was forewarned of a statutory maximum of sufficient length to accommodate the correct sentence; and determined that the statutory maximum used by the district court (5 years—60 months) would not accommodate either the incorrect sentence fixed by the district court nor the correct guideline range which we determine should have been used. Since a sentence above the maximum statutory sentence of which a defendant was forewarned in the Rule 11 colloquy is inherently harmful, we concluded that the right, proper, just and fair thing to do in this case is to vacate both the sentence and the plea and remand the case to the district court so that the parties can start over again with full awareness of the consequences of the "artful pleading" used by the government in framing the counts of the indictment.

Also, the dissent cites *United States v. Pierce*, 5 F.3d 791, as an example of a case in which our Court determined that error regarding the statement of a possible maximum sentence can be harmless. That's true, but in *Pierce* the actual correct sentence fixed by the district court was 72 months, just about 1/3 of the 18 year maximum statutory penalty stated by the district court at Pierce's Rule 11 hearing. Pierce's contention of error related to an application for enhancement filed by the government after his Rule 11 hearing which could have exposed Pierce to a maximum sentence of 39 years instead of 18 years, and that he had not been forewarned of that at his Rule 11 hearing. This Court held that the district court erred in failing to hold another Rule 11 hearing when the government filed its application for enhancement but such error was harmless. There was no error in *Pierce* as to the determination of the actual sentence as there is here in *Coscarelli*. The actual sentence in *Pierce* was well within the statutory maximum of which Pierce was advised at his Rule 11 hearing which will not be the case here in *Coscarelli* when the correct guidelines are applied.

## CONCLUSION

For the foregoing reasons, we vacate Coscarelli's conviction and sentence and remand for repleading and resentencing in accordance with this opinion.

VACATED and REMANDED.

EDITH H. JONES, Circuit Judge, dissenting:

I concur with the majority that the district court improperly applied the fraud guidelines when sentencing Coscarelli and that he should have been exposed to a sentencing range of 121–151 months because of the money-laundering element of the conspiracy count. I must respectfully dissent, however, from that part of the opinion which *sua sponte* vacates Coscarelli's guilty plea for a reason that was neither preserved below nor raised on appeal to this court. It is improper

for this court to decide that a plea was not "knowing and voluntary" when the defendant has never so alleged. It is also highly problematic for this court to scour the appellate record in search of errors that allegedly affront "higher justice" and then, without obtaining briefing from either party, to un-do a guilty plea and upset the parties' expectations and volition. Finally, I am convinced that the majority's interpretation of error here is incorrect, rendering even more capricious their decision to vacate the plea.

As far as I have found, it is unprecedented for a federal appellate court to investigate the adequacy of a Rule 11 plea colloquy on its own motion—much less vacate the plea—when the defendant never challenged the adequacy of his plea *in any respect* in either the trial court or the appellate court. *Cf. United States v. Corbett,* 742 F.2d 173, 178 n. 12 (5th Cir.1984) ("We hold only that where, as here, *appellant challenges the validity of his plea and seeks to withdraw it,* we should review the adequacy of the plea based on the Rule 11 transcript." [emphasis added]); *United States v. Adams,* 634 F.2d 830, 836 (5th Cir. Unit A Jan.1981) (in an appeal *where the defendant sought to enforce his plea bargain,* this court could, on its own motion, review the plea colloquy for error).

This court has consistently refused to consider issues that were neither preserved below nor raised in the briefs or arguments before this court. *See United States v. Johnson,* 718 F.2d 1317, 1325 n. 23 (5th Cir.1983) (*en banc*) (we will not review an improper jury instruction that was neither raised in the trial court nor claimed to be error on appeal). If this court sets out—as the majority has done here—to review all plea colloquies on our own motion for reversible error, our workload will be intolerable, and one of the most significant restraints on this court's

exercise of appellate authority—confining review to issues properly preserved—will vanish. *See United States v. Calverley,* 37 F.3d 160, 162 (5th Cir.1994) (*en banc*) (the practice of this court to review errors that have been properly preserved is founded upon considerations of fairness to this court, to the parties, and of the public interest in bringing litigation to an end after a fair opportunity has been afforded to present all issues of law and fact), *cert. denied,* —— U.S. ——, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).[1]

Even assuming that this court may consider the adequacy of the Rule 11 plea colloquy, the majority's application of a harmless error analysis is incorrect. Errors not raised in the district court are to be reviewed by this court for plain error, not harmless error. *See* FED. R. CRIM. P. 52(b); *United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *Calverley,* 37 F.3d at 162. This is true even when the court, as here, chooses *sua sponte* to review a defendant's Rule 11 pleading. Although FED. R. CRIM. P. 11(h) specifies that Rule 11 proceedings are subject to a harmless error review, certainly this rule presupposes that any alleged error has been complained about by the defendant at some point—either at trial or on appeal. This court has stated as much sitting *en banc:* a Rule 11 proceeding is reviewed for harmless error *"when [the defendant] claims* that the district court has failed to comply with Rule 11." *United States v. Johnson,* 1 F.3d 296, 298 (5th Cir. 1993) (*en banc*) (emphasis added).

Whether plain error or harmless error furnishes the appellate standard, however, any error which may have occurred is not, in my view, reversible. In order to withstand a plain error inquiry, the error must, *inter alia,* affect substantial rights: "the affecting of substantial rights requires that the error

---

1. None of the cases cited by the majority to support *sua sponte* review of the plea colloquy in this case is applicable. Two of those cases did not concern a review of Rule 11 proceedings, and the third is procedurally unique. *See Silber v. United States,* 370 U.S. 717, 717, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962) (defendant was convicted after a trial and there was no Rule 11 hearing; "the trial court squarely considered and decided the issue" that the Court reviewed on its own motion); *United States v. Pineda–Ortuno,*

952 F.2d 98, 105 (5th Cir.) (defendants appealed their convictions after a trial on the merits; this court *sua sponte* reviewed a double jeopardy issue), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992); *United States v. Adams,* 634 F.2d 830, 836–37 (5th Cir. Unit A Jan.1981) (after being convicted at trial, defendant appealed seeking enforcement of an alleged plea agreement and this court *sua sponte* reviewed the district court's unauthorized participation in the plea bargain discussions).

be prejudicial; it must affect the outcome of the proceeding." *Calverley,* 37 F.3d at 164. As I will show, it appears that Coscarelli had no intention of going to trial or asserting his innocence of these charges. Any error that occurred was thus not outcome-determinative. Moreover, "plain forfeited errors affecting substantial rights should be corrected on appeal only if they 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). I disagree with the majority that any error, much less a grievous plain error, occurred here.

Under a harmless error analysis, any error which may have occurred was not reversible. "To determine whether a Rule 11 error is harmless (*i.e.,* whether the error affects substantial rights), we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *Johnson,* 1 F.3d at 302. After a thorough review of the Rule 11 transcript and the sentencing hearing, I am persuaded that Coscarelli did understand the consequences of his plea. *See id.*

First, the majority states that "it is clear that Coscarelli did not know or understand that he was facing a substantially greater maximum sentence than the five year maximum." The record does not support this contention. The majority quotes that part of the plea colloquy where the district court informs Coscarelli that he may be sentenced to up to five years *for each count* of the indictment:

> The indictment consists of 11 counts, *on each of the 11 counts* to which you've indicated you wish to plead guilty the maximum possible penalty is imprisonment for up to five years and a fine of not more than $250,000, in addition, the government—in addition, the court may assess a special—will assess a special assessment of $50 per count. . . .

(emphasis added). The district court's language did not, as the majority concludes, suggest to Coscarelli that he would receive a maximum sentence of five years. Rather, he was informed that he may receive up to five years for each of the eleven counts of the indictment.

Second, the majority states that in response to being given this information from the court, "Coscarelli acknowledged that he understood the ramifications of his plea." In fact, before acknowledging his assent, Coscarelli inquired whether the special assessment would be $50 total or $50 for each count of the indictment. The court went on to explain that Coscarelli would be assessed $50 for each count of the indictment. This is significant because surely if Coscarelli had any questions regarding the court's language regarding the maximum penalty per count of the indictment, he would have spoken up at that point, as he did regarding the special assessment.

Third, during the plea colloquy the court further explained to Coscarelli:

> Do you understand that I may not be able to determine that guideline sentence for you [sic] case until after a presentence report has been prepared by the probation department and you and the government have had an opportunity to review that report and challenge any fact reported and that the sentence imposed might be different than any estimate your attorney may have given you?
>
> The Defendant: Yes.
>
> The Court: Do you also understand that after it's been determined what guidelines apply to your case that I have the authority in some instances to impose a sentence that's greater or less than what is called for under the guidelines?
>
> The Defendant: Yes, your honor.

Finally, at sentencing, in a statement to the court, Coscarelli indicated his willingness to plead guilty to the offenses charged:

> I really feel bad about everything that's happened. I got my son involved in this. I take responsibility for him on that. You know, bar the thing about getting the two points [referring to the lawyers' discussions with the court regarding the calculation of his points under the guidelines]. I don't care. I have to say this. I want to make it up to him, my mother, and hopefully society sometime. . . . [¶]It's funny

in a way, I almost like to thank [the prosecution] for doing this. It stopped a chain that was like an addiction and I couldn't hardly stop myself.... [¶] I don't blame anybody but me. I make no excuses.

In the face of Coscarelli's penitence, there is no record evidence—nothing more than the majority's speculation—undergirding their conclusion that if the district court had informed Coscarelli of the potentially longer sentence for one object of the conspiracy count, he would have been unwilling to plead guilty.

The majority relies on *United States v. Watch,* 7 F.3d 422 (5th Cir.1993), in concluding that the district court's alleged erroneous instruction to Coscarelli on the maximum penalty was harmful. *Watch* is, however, inapposite. In *Watch,* the defendant appealed to this court complaining of a Rule 11 violation. *See id.* at 424. Coscarelli has not. Further, in *Watch* the sentencing court misadvised the defendant regarding the mandatory *minimum* time to which he would be sentenced. *See id.* at 425–26. In the case at bar, Coscarelli was allegedly misadvised concerning his possible *maximum* sentence.[2]

In another similar case in which the sentencing court misadvised the defendant regarding the possible maximum sentence, this court found the error to be harmless. *See United States v. Pierce,* 5 F.3d 791, 794 (5th Cir.1993) (DeMoss, J.). As this court stated in *Pierce:*

> [T]he fact that [the defendant's] true "worst case scenario" [*i.e.* the maximum sentence that he could receive] was actually worse than he was informed would not have reasonably caused [the defendant] to doubt the wisdom of his plea. To the contrary, logic and reason would weigh this factor in favor of his decision to plead guilty: if [the defendant] was willing to plead guilty when facing what he believed was an 18 year maximum, would he not have been just as willing if [he had] known that the maximum was 38 years?

*Id. See also* FED. R. CRIM. P. 11(h) Advisory Committee's Note (citing *United States v. Peters,* No. 77–1700, 588 F.2d 1353 (4th Cir., Dec.22, 1978) (unpublished), a case in which the defendant was not correctly informed of the maximum possible sentence, as illustrative of Rule 11(h) harmless error).

While I firmly believe that Coscarelli was not misinformed of his possible maximum sentence, I also believe that the record shows that any error concerning Coscarelli's possible maximum sentence did not affect his decision to plead guilty. By choosing to vacate Coscarelli's guilty plea without even as much as a hint from Coscarelli regarding any dissatisfaction with his plea, and without allowing the government a fair opportunity to respond, the majority has grossly interfered with the plea bargain process. A guilty plea pursuant to a plea agreement is a bargain between the government and the defendant. Rule 11 authorizes neither the trial court nor this court to reshape that bargain. Nevertheless, that is the effect of the majority's action in vacating Coscarelli's plea. I respectfully dissent.

---

**2.** *United States v. Guerra,* 94 F.3d 989 (5th Cir. 1996), a habeas appeal cited by the majority, is also distinguishable from the case at bar. In *Guerra,* the petitioner vigorously pursued his claim that he did not knowingly, voluntarily plead guilty because he was misinformed that an extraordinarily high potential sentence could be imposed.