# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-00982-SCT

*AARON CARTER a/k/a 'LITTLE HEAD'*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/1998 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALLAN D. SHACKELFORD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/05/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 08/26/1999 | |

**BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. In this case, Aaron Carter was found guilty of capital murder and sentenced to life without parole. He raises a single issue on direct appeal: that the verdict is against the overwhelming weight of the evidence. Given the conflicting evidence and our limited standard of review, we affirm.

¶2. Via an indictment filed December 11, 1996, Aaron Carter and George Pierce were charged with capital murder while engaged in the commission of a robbery. The indictment charged them with either committing the crime individually or with having aided and abetted the other.

¶3. The cases were severed for trial. Pierce went to trial in September, 1997, and December, 1997, and on both occasions the jury was unable to agree on a verdict. The prosecution then announced that it would not be seeking the death penalty and moved to consolidate the cases. The motion to consolidate was granted January 20, 1998.

¶4. Trial commenced February 17, 1998. The jury found both men guilty of capital murder and the trial court sentenced Aaron Carter to life without parole.

¶5. The prosecution in this case presented no physical evidence tying either Aaron Carter or George Pierce to the crime. They did have, however, two self-proclaimed eyewitnesses: one was drunk at the time of the crime and and had been doing crack cocaine the whole day; the other was a heavy marijuana user who was fifteen when she allegedly witnessed the shooting. George Pierce was implicated by one additional witness, his sometimes girlfriend, who testified that he told her, some hours after the shooting, that he had killed a man.

¶6. Clarksdale Police Investigator Fernando Harris testified that the victim, James Ryalls, was able to relate prior to his death that he had been coming out of Toney's Package Store where he worked, when he was attacked by a male who took Mr. Ryall's .38 pistol from him. Some men then pulled him over to the west side of the building where he was shot. As Ryalls fell to the ground, they shot him again.

¶7. Harris testified that he received a call that night around 9:30 from a Tyrone Collins who stated that he had seen the incident. As a result of that call, Officer Harris sought out and arrested George Pierce and Aaron Carter.

¶8. Victor Tyrone Collins testified that in October, 1996, he lived across the street and down a block from Toney's Liquor store. On October 28, Collins was drinking, smoking crack (approximately $150 to $200 worth) , and hanging out behind an old house with eight or nine friends.

¶9. Collins stated that after he purchased liquor from Toney's Liquor store that day, he saw "Little Head" [Aaron Carter] and George Pierce standing by the Delta Packing building, talking. Collins testified that he looked up when he heard some shots and saw George Pierce standing over a man and shooting him. Like everyone else, when Collins heard the shots, he ran.

¶10. Savannah Watson was seventeen at the time of the trial, fifteen when the crime occurred. She testified that on October 28, 1996, she was visiting her sister downtown. She saw a fight over by the liquor store. It was a "white dude and Little Head". The fight started in the front of the store and then the white man was dragged to the side. Savannah testified that she does not know Little Head's real name. When she heard the shots, she ran. Afterwards, she got a bus ticket and headed for Memphis because she did not want to have anything to do with it.

¶11. Savannah testified that there were two people standing outside the building but she did not really see the other guy's face. She did see that Little Head had a pistol. However, she did not see the trigger man or the shooting. Nor did she see the white man hit Little Head. Savannah admitted that at the time of crime, she was smoking a lot of marijuana.

¶12. In October, 1996, Willie Tillman was working as a painter in Batesville. On October 28 of that year, he went to the Hong Kong Market to get a beer. He saw George Pierce as he was walking away from the

Hong Kong. Then he went and sat with some friends, Tyrone and Willie Collins, at a house nearby. While he was standing there he heard a commotion. Tillman testified that he looked back towards the liquor store and saw two black males, whom he did not recognize, beating someone on the ground. Then, after a while, he heard four shots from a gun. This occurred about fifteen to twenty minutes after he saw Pierce standing under the tree.

¶13. Tillman testified that his friend Tyrone Collins was pretty unstable that day -- staggering and drunk.[1] When Tyrone got into an argument with his brother Willie, Tillman and Willie took Tyrone into his house across the street. Willie and Tillman were standing outside the house talking when Tillman heard the shots. Tillman testified that he did not see Tyrone Collins outside, however. If Tyrone came back out of the house. Tillman stated that while he knows Little Head, he did not see him that night.

¶14. Latasha Veal was 18 at the time of the trial. She testified that George Pierce was the father of her second child. She had been seeing George off and on when she ran into him on October 28, 1996. Latasha joined George between 8 and 9 p.m. and rode around for an hour. They planned to check into a motel but ended up going to Memphis instead. On the way to Memphis George was acting normal. She asked him why he had been pacing earlier, and he told her he did not know what to do about something, that he had killed a man at the liquor store.

¶15. In Memphis, Latasha and George stayed at George's brother's house. They came back to Clarksdale the next day and George turned himself in.

¶16. Carter and Pierce presented separate alibi defenses. Carter's witnesses, including himself, testified that he spent the night driving around with two friends. Both of the friends were impeached by the fact that they had been questioned in the early morning hours after the shooting and denied having been with Carter. Wesley Fuqua explained that at the time he was questioned his father was listening in on the conversation and he did not want his father to know who he was hanging around with.

¶17. The other friend, Deon Strong, testified at trial that he spent two to three hours in Carter's company that night. He did not recall telling an officer who questioned him via telephone at 4 in the morning after the shooting that he had spent merely fifteen or twenty minutes with Carter the night before.

¶18. Carter also presented two of his relatives, his cousin Evelyn Davis and his grandmother, Willie Merle Williams, who stated that they had seen Carter at his grandmother's house around 9:30 or 10:00 p.m. and that he was accompanied by Wesley and Deon.

¶19. Mary Alice McClean testified that she was working at the Exxon on U.S. Highway 49 South when Carter came in with two of his friends at about 8:20 p.m.

¶20. Carter's mother, Shirley Carter, testified that she saw Aaron that night between 8 and 9 when he came by the house to pick up some cigarettes. Carter was with Deon and Wesley. Carter returned to the house between 10:30 and 11:00 p.m. The police came to the house about 3 a.m.

## LAW

**Is the verdict against the overwhelming weight of the evidence?**

¶21. Carter argues that there were only two witnesses who were able to tie him to this crime and neither of those witnesses were credible. Tyrone Collins was drunk and high on crack at the time he supposedly witnessed the crime. Savannah Collins only came forward a year after the crime. She gave a statement to Officer Fernando Harris that she heard two shots from inside the store, saw George and Little Head and the white man come out of the store. When she learned at trial that the door of the liquor store was locked (making it improbable that the altercation started in the store), Savannah denied having made that statement. Furthermore, her testimony that she heard only two shots, when there were six, also impeaches her credibility.

¶22. On the other hand, Carter argues, the testimony of his alibi witnesses was consistent. "The testimony of Tyrone and Savannah is so tenuous and the testimony of the witness called by Aaron is so consistent that the verdict should not stand," Carter argues.

¶23. The State points to the same evidence as being more than sufficient to support the jury's verdict in this case. Savannah Watson testified that she was "sure" that it was Carter who was fighting with the white man outside the liquor store. Citing **McClain v. State**, 625 So.2d 774, 778 (Miss. 1993), the State argues that on a challenge to the sufficiency of the evidence, the prosecution must be given the benefit of all credible evidence consistent with the jury's verdict.

¶24. One seeking a new trial on appeal is challenging the trial court's refusal to grant a new trial. The trial court has the discretion to set aside the jury's verdict and order a new trial only where the court is "convinced that the verdict is so contrary to the weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." **Roberts v. State**, 582 So.2d 423, 424 (Miss.1991). *See also* **Groseclose v. State**, 440 So.2d 297, 300 (Miss. 1983). The granting of a new trial being discretionary, the trial court's decision is reversible only where it is an abuse of discretion. **_Herring v. State_, 691 So.2d 948, 957 (Miss. 1997)**.

¶25. A motion for a new trial tests the weight of the evidence rather than its sufficiency. **Butler v. State**, 544 So.2d 816, 819 (Miss.1989). "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal."**Herring**, 691 So.2d at 957(citing **Benson v. State**, 551 So.2d 188, 193 (Miss.1989)). In determining whether a jury verdict is against the overwhelming weight of the evidence, the Court accepts as true the evidence favorable to the State. **Van Buren v. State**, 498 So.2d 1224, 1229 (Miss. 1986). "[W] here there is conflicting testimony, the jury is the judge of the credibility of the witnesses." **Wetz v. State,** 503 So.2d 803, 812 (Miss. 1987); **Gandy v. State**, 373 So.2d 1042, 1045 (Miss.1979).

¶26. This standard is not as great as that for challenging the sufficiency of the evidence. **May v. State**, 460 So.2d 778, 781 (Miss. 1984); **Pharr v. State**, 465 So.2d 294, 302 (Miss. 1984). This Court has held that while the evidence may be sufficient to warrant presentation to a jury it nonetheless may be so inadequate as to create sufficient doubt regarding the defendant's guilt. **Quarles v. State**, 199 So.2d 58, 61 (Miss.1967).

¶27. The fact that the prosecution's eyewitnesses had some drug and alcohol problems and that one of them was drunk at the time of the shooting does not render them incompetent per se. The general trend is to reject rigid rules of incompetence in favor of admitting the testimony and allowing the triers of fact judge the weight to be given such evidence. *See, e.g., **United States v. Blankenship***, 923 F.2d 1110 (5th Cir.

1991); *United States v. Killian*, 524 F.2d 1268, 1275 (5th Cir. 1975) (trial court did not abuse discretion in allowing witness to testify despite contention that he was a heavy user of drugs and suffered time to time from hallucinations); *White v. State*, 403 So.2d 331 (Fla. 1991); *People v. Burgos*, 243 Ill.App. 993, 184 Ill.Dec. 858 , 614 N.E.2d 59, 63 (Ill.Ct.App. 1993) (eyewitness testimony of witness in murder case was not unworthy of belief even though witness admitted that he had drunk beer on night of incident and he and defendant were seeking to purchase marijuana at time of crime); *State v. Johnson*, 714 S.W.2d 752 (Mo. 1986) (not error to allow eyewitness to testify even though he admitted to habitual drug use including lots of cocaine prior to killing); *State v. Hubbard*, 601 P.2d 929 (Utah 1970).[2]

¶28. There was certainly some evidence in the form of eyewitness testimony to support the jury's verdict in this case. The standard of review militates against reversing on this issue.

¶29. Given the record and the appeal as presented by Carter's counsel, this Court has no choice but to affirm the conviction and sentence. Therefore, we affirm the judgment of the Coahoma County Circuit Court.

¶30. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IN ACCORDANCE WITH SECTION 97-3-21, SECTION 99-19-101, SECTION 47-7-3(1)(e), SECTION 47-7-3(1)(f) AND SECTION 47-5-139(1)(a), MISSISSIPPI CODE OF 1972, AS AMENDED, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. AARON CARTER SHALL NOT BE ELIGIBLE FOR PAROLE DURING THE TERM OF SAID SENTENCE.**


**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**


1. The testimony about Tyrone Collins's condition and whereabouts is important because Tyrone Collins is one of the two self-proclaimed eyewitnesses. Collins testified right after Tillman.

2. *See also* 81 Am.Jur.2d §186, at 193 (1992) ("Drug use per se does not render a witness incompetent.") ; David J. Oliveiri, Annotation, Use of Drugs as Affecting Competency or Credibility of Witness, 65 A.L.R.3d 705, 716 (1975).